## DILLARD *v.* STATE.

### Opinion delivered June 18, 1898.

1. ASSAULT WITH INTENT TO KILL—INDICTMENT.—An indictment for assault with intent to kill, which alleges that the assault was made unlawfully, feloniously, wilfully, and with malice aforethought, is sufficient. (Page 405.)

2. DEFENSE—AGREEMENT TO DISMISS.—The fact that a former prosecuting attorney, upon the recommendation of the grand jury, agreed to dismiss a prosecution, is no ground for dismissing it. (Page 405 )

3. SAME—WANT OF PROSECUTION.—Under Sand. & H. Dig., § 2161, providing that a person indicted for an offense, and not brought to trial before the end of the third term of court in which the indictment is pending, shall be discharged "unless the delay happen on his application," *held* that before a prisoner would be entitled to discharge for failure to prosecute he must have demanded a trial, or at least resisted postponement. (Page 406.)

4. SPECIAL JUDGE—POWER TO ADJOURN COURT.—A special judge trying a cause in which the regular judge is disqualified has power to adjourn the court to a subsequent date, if not in conflict with the term of any other court in the circuit, and to convene the court at such adjourned term. (Page 407.)

5. EVIDENCE—WHEN IMMATERIAL.—On a trial for assault with intent to kill, it was not prejudicial error to exclude evidence as to the size of ball with which the person assaulted was struck, as it is immaterial, if he was assaulted, to prove whether he was hit or not. (Page 408.)

6. SAME—SUFFICIENCY.—A conviction of an assault with intent to kill will be set aside where the evidence shows that the assault was committed by defendant during the progress of a riot, and while he was acting under the influence of passion and excitement caused by provocation apparently sufficient to make the passion irresistible. (Page 408.)

Appeal from Prairie Circuit Court, Southern District.

THOMAS C. TRIMBLE, Special Judge.

*H. King White* and *J. G. Thweatt*, for appellant.

The state should be held to its agreement, made pursuant to the recommendation of the grand jury, to *nolle prosequi* this

case. The delay in bringing defendant to trial was not caused by "the application of defendant," and he should be discharged. Sand. & H. Dig., § 2161. All that is required of a duly qualified expert is that he state his opinion. 61 Ala. 98; 34 Ark. 520; 55 Ark. 593, 599. The court erred in excluding evidence of threats, made by the conspirators immediately before the killing. 43 Ark. 289; 48 Ark. 333. The court erred in overruling the defendant's plea to the jurisdiction of the court.

*E. B. Kinsworthy*, attorney general, for appellee.

The evidence shows that appellant never asked for a trial, and that the cause was continued from time to time, either by consent or upon application of appellant. No abuse of discretion being shown, the presumption is in favor of the trial court's actions. Sand. & H. Dig., §§ 2157 and 2163; 26 Ark. 323; 54 Ark. 243. The special judge has the same power and authority in trying the case for which he is elected as the regular judge could have. Const. Ark. § 21, art. 7; 34 Ark. 569. The indictment need not allege that the assault was committed with premeditation. Sand. & H. Dig., § 1477; 55 Ark. 439. It was appellant's duty to have submitted to the arrest. (18 Am. St. Rep, 89); and he is guilty of assault with intent to kill for shooting the officer to prevent arrest. 34 Minn. 361; 37 Kas. 369; 61 Ark. 592.

HUGHES, J. The appellant was indicted by the grand jury of Monroe county for assault with intent to kill, committed, as the indictment alleges, on the first day of September, 1888, upon J. W. B. Robinson, who at the time was the sheriff of the county, and was attempting, as some of the testimony tends to show, to arrest the appellant, who was engaged in a fight.

The appellant contends that the indictment was insufficient because it did not charge that the assault was committed with premeditation. The indictment alleges that the assault was made unlawfully, feloniously, wilfully, and with malice aforethought. This is the language of the statute, and is sufficient.

The appellant also contends that the case against him ought to have been dismissed, because a former prosecuting attorney, upon the recommendation of the grand jury that it

with other cases ought to be dismissed, had agreed to dismiss it. Of course, there is nothing in this contention.

Appellant also moved the court to dismiss the prosecution against him for the reason that he was not brought to trial within three terms of the court in which he was indicted. This motion was made under section 2161 of Sandels & Hill's Digest, which is as follows: "If any person indicted for any offense, and held to bail, shall not be brought to trial before the end of the third term of the court in which the indictment is pending, which shall be held after the finding of such indictment and holding to bail thereon, he shall be discharged, so far as relates to said offense, unless the delay happen on his application."

The cause, on application of appellant, had been removed from Monroe to Prairie county, where it was tried. When it was called for trial in Prairie county, evidence was heard upon this motion, and it appears that there was no order of record in said cause at the March or September term, 1894, March or September term, 1895, March or September term, 1896, or March term, 1897; thus showing that seven terms of the court had passed without any steps having been taken in the case. But it appeared in evidence that the former prosecuting attorney, in consequence of the agreement above, had told the appellant not to appear in court again, that his case would be dismissed, and that, relying thereon, the defendant (appellee) had not been at the court since 1892, until the term at which he was tried, being the September term, 1897, at which term he was notified to appear. So it appears that the appellant was consenting to or acquiescing in the delay, and made no demand for a trial or disposition of the case against him.

In the case of *Stewart* v. *State*, 23 Ark. 720, where this statute is considered, discussed and construed, the opinion was delivered by Mr. Chief Justice Watkins, with his usual clearness and ability, and the conclusion was reached that "the spirit of the law is that, for a prisoner to be entitled to his discharge for want of prosecution, he must have placed himself on the record in the attitude of demanding a trial, or at least of resisting postponements." Said the learned Chief Justice: "We cannot shut our eyes to the fact, known to all who are

acquainted with the administration of justice, that where the crime is of magnitude, delays diminish the chances of conviction, and with that hope are usually sought or acquiesced in by ·the accused." We think the case of *Stewart* v. *State, supra,* is conclusive upon the question under consideration here, and so adjudge. There was no error in refusing to dismiss the cause on motion of the defendant.

The defendant (appellant) was arraigned, and pleaded "Not guilty," before the change of venue from Monroe to Prairie county. The Hon. James S. Thomas, judge of that court, being disqualified to try the case, the Hon. T. C. Trimble was elected special judge to try the same. The regular judge opened the court at the term when the trial was had, and the Hon. T. C. Trimble, special judge, sitting to hear the case, on the 8th day of October, 1897, adjourned the court to October 25, 1897. The appellant, by leave of the court, withdrew his plea of not guilty, and filed his plea to the jurisdiction of the court, on the ground that the special judge had no power to convene the adjourned session of the court. The next term of court in that circuit did not begin until November, so the adjournment did not interfere with any other term of court, and was ordered by the special judge elected on account of the disqualification of the regular judge, who had opened the term. The record is silent as to the presence or absence of the regular judge on the 25th of October, when the adjourned session was convened. But if he was absent, the special judge had the power to open the court and try the cause. Having been elected to try this case, he was the judge of the court for that purpose, and had the same power and authority in that case that the regular judge would have had, had he not been disqualified, and had he been trying the case. But when the term ends, the authority of a special judge ceases. Const. of Ark. art. 7, § 21; *Fishback* v. *Weaver,* 34 Ark. 569.

There was no error in excluding from the jury the testimony of D. B. Renfro, Willis Parks, J. W. Walker and R. N. West, because there is no evidence tending to show the connection of J. W. B. Robinson with the matters testified to by them. The testimony of these witnesses tended to show that threats had been made previous to the fight by one Pope

Montgomery, and that Walls, who was killed in the fight, had previously had the pistol of Parks, and refused to give it up, saying that he would have a use for it on Saturday, the day of the riot.

Dr. R. M. West was introduced as an expert to testify as to the size of the ball with which J. W. B. Robinson was shot, and gave his opinion that he was not shot with a 44 caliber ball, but stated that he could not say certainly. The court excluded this testimony. It is our opinion that if this evidence was material, it ought to have been admitted. But what difference could it make, in a prosecution for assault with intent to kill, whether the party assaulted was hit or not, if the evidence showed the assault with the intent to kill? There was positive testimony that J. W. B. Robinson was shot at with a pistol three times, and was shot down the last time, by the appellant, though there is some confusion and conflict of testimony on this last shooting. The defendant would be equally guilty if he made the assault with intent to kill by shooting at the party assaulted, whether he hit him or did not hit him. "An assault is an unlawful attempt coupled with present ability to commit a violent injury upon the person of another." Sandels & Hill's Digest, § 1472. There was no error, prejudicial to the defendant, in excluding the testimony.

We come to consider the only remaining question in the case. Is the evidence sufficient to sustain the verdict of guilty of assault with intent to kill? Before the jury could have properly found this verdict, they must have found, from the evidence in the case, that, had death ensued from the assault made by the appellant upon Robinson, the appellant would have been guilty of murder. *Lacefield* v. *State,* 34 Ark. 275.

"Section 1639 (Sand. & H. Dig.) Murder is the unlawful killing of a human being, in the peace of the state, with malice aforethought, either express or implied."

"Sec. 1641. Express malice is that deliberate intention of mind unlawfully to take away the life of a human being which is manifested by external circumstances capable of proof."

"Sec. 1642. Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing manifest an abandoned and wicked disposition."

The evidence in this case shows that on Saturday, the 1st of September, 1888, there was a political meeting at the town of Clarendon, in Monroe county, where the alleged offense is said to have been committed. Excitement was at white heat between the adherents of two opposing candidates for sheriff of the county. The appellant was the warm supporter of Capt. J. W. Walker, one of the candidates. J. W. B. Robinson was the other candidate. A general riot occurred between the adherents of these two candidates, in which the appellant took part. In the fight which occurred between him and others, he shot and killed Walls, and was himself shot twice, cut eight times with a knife, and otherwise beaten and bruised. While he was engaged actively in this fight, and about the time he was shooting at Walls, J. W. B. Robinson, the sheriff, rushed up and pushed himself into the crowd, called on Dillard to halt, and surrender, three or four times, according to Robinson's testimony. Robinson says: "He simply looked at me. I then pulled my pistol, but the trigger was hung fast, and would not fire. * * * I threw the pistol on him, ran on him, and thought I would try to bluff him. * * * Instead of running, he fired at my breast. I then wheeled to make my escape from him. About the time I reached the alley, he fired at me again, and struck my shoe heel. As I ran down the alley, some forty or fifty yards, he fired at me again, and struck me just below the hip bone. * * * When the defendant shot me, I was running from him."

There is testimony in the case tending to show that Robinson, when he rushed on Dillard, fired at him; and Dillard, in his testimony, says that Robinson shot him. There is also testimony tending to show that when Robinson fell in the alley he had his pistol in his hand. There is testimony tending to show that, as Robinson and Dillard ran into the alley, several shots were fired up the alley, and that when Dillard emerged from the alley his face was quite bloody; and he says that he was sick and dazed when he went into the alley; says that when Robinson shot him, finding Robinson was not going to stop, he fired; that he was very sick, and could not remember what he did after that.

There seems, from the evidence, to have been a general fight;

Dillard being the object of most of the assaults made with clubs, knives and pistols, many of which took effect upon him, as the evidence shows there were many bruises upon his body, eight knife wounds, and two wounds from pistol shots. It was a full-grown riot, of large proportions and fatal consequences. We are of the opinion that the evidence clearly shows that, in pursuing and shooting at Robinson, Dillard was acting under the influence of passion and excitement, caused by provocation apparently sufficient to make the passion irresistible, and that if his shooting at Robinson had resulted in Robinson's death, he would not have been guilty of murder, but of manslaughter only, and that therefore he is not guilty of assault with intent to kill. "While it is true that every person is presumed to contemplate the ordinary and natural consequences of his acts, such presumption does not arise where the act fails of effect, or is attended by no consequences; and where such act is charged to have been done with a specific intent, such intent must be proved, and not presumed from the act." *Lacefield* v. *State*, 34 Ark. 280.

For the want of evidence to sustain the verdict, the judgment is reversed, and the cause is remanded for a new trial.