### WARE v. STATE.

### Opinion delivered June 25, 1923.

1. CRIMINAL LAW—MOTION TO DISCHARGE PRISONER—APPEALABLE ORDER.—An order of the circuit court overruling a motion for discharge of prisoners upon the ground that they have not been brought to trial before the end of the second term of the court having jurisdiction, which was held after the finding of the indictment, in violation of Crawford & Moses' Dig., § 3132, is a final order from which an appeal will lie, under Crawford & Moses' Digest, § 2129, subdiv. 2.

2. CRIMINAL LAW—FAILURE TO PROSECUTE—RIGHT TO DISCHARGE.—Crawford & Moses' Dig., § 3132, providing for the discharge of any person indicted and committed to prison if he shall not be brought to trial before the end of the second term of the court held after the finding of the indictment, "unless the delay shall happen on the application of the prisoner," is mandatory.

3. CRIMINAL LAW—FAILURE TO PROSECUTE—EXCUSE.—Where the court found that the failure to bring prisoners to trial before

the end of the second term of the court after the finding of the indictment was not upon the application of such prisoners, it was error to refuse to order their discharge where it appears that there was sufficient time at either of said terms to try the prisoners, and the excuse offered by the State was that the witnesses upon whom the State had relied had repudiated their testimony given at former trials, and therefore that the State desired a continuance in order to procure other witnesses.

Appeal from Lee Circuit Court; *E. D. Robertson,* Judge; reversed.

*Murphy, McHaney & Dunaway, R. D. Smith, Scipio Jones* and *Mann & McCulloch,* for appellants.

The remedy of appeal, certiorari or prohibition is available to petitioners. The order of the lower court overruling their motion for discharge was such a final order as to sustain an appeal to this court for review. C. & M. Digest, §§ 2129, 3132; 72 Ark. 533; 28 Ark. 92; 89 Ark. 163; 100 Ark. 496; 25 Ark. 420; 5 Ark. 398. It may be reviewed upon certiorari in case appeal can not be taken. 19 Ark. 410; 45 Ark. 158; 13 Ark. 720. The first two trials of appellants did not deprive them of the benefit of the statute now sought to be invoked, and these appellants brought themselves within the letter and spirit of the statute. They were tried at the May, 1920, term of Phillips Circuit Court, convicted, and the cases reversed on appeal, and remanded for new trials, and they have been awaiting trial ever since. At October, 1921, term of the Lee Circuit Court they agreed to a continuance, but at the April and October, 1922, terms they appeared in court and demanded that they be brought to trial, but they were denied trials and the causes continued, over their protests, which entitled them to a discharge. 13 Ark. 720; 65 Ark. 404; 102 Ark. 393. Petitioners have prayed a writ of prohibition in case they are denied relief on appeal or certiorari. 26 Ark. 51. The court lost jurisdiction to try these cases, the facts set up in motion for discharge being true. 33 Ark. 191; 73 Ark. 66; 48 Ark. 227. The precise question was decided in a recent Missouri case. 246 S. W. (Mo.)

189. The statute has been before this court three times in the cases already cited, but the question as to the proper remedy appears not to have been determined. The petitioners are entitled to relief, however, and the powers of this court are sufficiently broad to afford it. 3 Ark. 532. Petitioners should be discharged from the prosecution. C. & M. Digest, §§ 3132-3135, art. 2, § 10, Constitution of Arkansas. 133 Cal. 349, 65 Pac. 828; 65 Ark. 404; 192 Ark. 393; 85 Cal. 515, 25 Pac. 829; 154 Ind. 450, 57 N. E. 106; 98 Pac. 122. Arkansas statute was evidently drafted from the Missouri statute, which has recently been construed. 246 S. W. (Mo.) 189. Appellants have brought themselves within the rule of 13 Ark. 720. The State has made no showing under § 3135, C. & M. Digest, that would prevent appellants being granted the relief demanded. 62 Ark. 543; 70 Ark. 521; 73 Ark. 625; 75 Ark. 350; 79 Ark. 594; 103 Ark. 119; 54 Ark. 243; 57 Ark. 165; 82 Ark. 203; 91 Ark. 567; 94 Ark. 169. The burden was on the State to bring itself within the provisions of said § 3135, which it utterly failed to discharge. Appellants should be discharged from the indictments and restored to their liberty.

*J. S. Utley,* Attorney General, and *John L. Carter* and *Wm. T. Hammock,* Assistants, for appellee.

Appellants, petitioners, seek a discharge from the indictments for offenses charged against them, under § 10, art. 2, Constitution of 1874, and §§ 3132-3135, C. & M. Digest. The testimony of the judge of the court shows there was not sufficient time at the adjourned day of the October, 1922, term, which adjournment was consented to by petitioners, in which to try the cases against petitioners. The term lapsed by reason of the fact that the judge was holding court in another county of the district at time appointed for holding adjourned term. 38 Ark. 227; 49 Ark. 112; 49 Ark. 230; 63 Ark. 5; 69 Ark. 459; 71 Ark. 313; 82 Ark. 94. The failure to try the cases on December 11, 1922, was not the fault of any

one. 8 R. C. L. 72. "Permissible Delays," 16 C. J. 441, 445, § 3134, C. &. M. Digest. Waived right, no exceptions saved to any adverse ruling denying trial. 8 R. C. L. 74; 84 Ark. 128; 109 Ark. 346. Appellants have not pursued proper remedy. C. & M. Digest, § 2129. Final order defined. 100 Ark. 500. Order in controversy does not meet the requirements. 122 Ark. 155; 52 Ark. 224. The motion to discharge was merely an incident to the main case, and the denial of it was not a final order from which an appeal would lie. Certiorari will not lie when relief can be afforded by resort to other available modes of review. 116 Ark. 310. A habeas corpus proceeding would be a more appropriate remedy than either of the courses suggested by the petition. The following States appear to hold that habeas corpus is the proper remedy: California, Kansas, Nebraska, Nevada, New Jersey, New York, North Dakota, Texas, Colorado, Georgia, Massachusetts, Mississippi, Montana, Pennsylvania, South Carolina and Virginia. Annotations in 1912-D, 1273 Ann. Cas. Court cannot review question of fact on certiorari. 149 Ark. 338; 30 Ark. 148. Certainly the lower court was not without jurisdiction to make the order complained of. 65 Ark. 404; 102 Ark. 393; 94 Ark. 54; 48 Ark. 283. No ground for writ of prohibition. 144 Ark. 169. Neither did petitioners object to the jurisdiction of the lower court, but rather invoked it. 145 Ark. 540; 149 Ark. 237.

*R. D. Smith, Scipio A. Jones, Mann & McCulloch* and *Murphy, McHaney & Dunaway,* in reply.

The failure of the judge to hold the special or adjourned session of the Lee Circuit Court on Dec. 11, 1922, does not bring the case within the exception provided in § 3134, C. & M. Digest. Authority for special adjourned sessions, § 2112, C. & M. Digest; 39 Ark. 448; 104 Ark. 632. It would seem that the term of the Lee Circuit Court ended when the term of the Phillips Circuit Court began. 82 Ark. 188; 129 Ark. 558; C. & M. Digest, § 2208. Appellants have pursued the proper

remedy. Petition could be considered amended to apply for habeas corpus, etc. C. & M. Digest, § 1030; 69 Ark. 642; 123 Ark. 510; 30 Ark. 681; 33 Ark. 316; 27 Ark. 365.

WOOD, J. On May 14, 1923, the petitioners filed with the clerk of this court a transcript of the record of the proceedings had in their cases in the Lee Circuit Court, and prayed an appeal from the order of that court overruling the motion to discharge them. Along with this record they filed a petition to this court in which they alleged that they were indicted for murder in the first degree in the Phillips Circuit Court at the October, 1919, term; that they were twice tried and convicted in that court, and, on appeal to this court, the judgments were reversed, and the causes remanded for a new trial; that at the May, 1920, term of the Phillips Circuit Court a change of venue was granted them and their cases were transferred to the Lee Circuit Court; that at the October, 1921, term of the Lee Circuit Court the cases were continued by consent; that at the April, 1922, term of that court the petitioners filed a motion to have their cases set for trial on a day of that term; that the cases were not tried at that term, but were continued without the consent of the appellants, who were present and demanded a trial; that at the October, 1922, term of that court the appellants again filed a motion in open court asking that their cases be set for trial on a certain day; that the cases were not tried at that time, but were continued, in spite of the fact that the appellants were present demanding a trial.

Appellants further alleged that at the April, 1923, term they filed in open court a motion for a discharge on the ground that they had not been brought to trial before the end of the second term of the court having jurisdiction to try their cases; that the court, upon hearing the motion, found that there had been time to try the causes at the April and October, 1922, terms; that the petitioners had not consented to a continuance of their causes, but the court overruled the motion to discharge.

The petitioners moved for a new trial, which was over-ruled, and they prayed an appeal to this court, which prayer was denied.

The petitioners further alleged that they had been confined in jail in Phillips and Lee counties since the finding of the indictments, and that they are now confined in the Lee County jail. They alleged that, by reason of the delay on the part of the State, they have not been brought to trial before the end of the second term of the court having jurisdiction of the causes, and that, under the Constitution and statutes of this State, they are entitled to be discharged from the offenses for which they are indicted. They alleged that the Lee Circuit Court, at its next October term, will proceed to try them, unless prevented by this court, which trials will cause these petitioners to spend large sums of money in defense, which they are unable to bear; that the Lee Circuit Court is without jurisdiction to try them. Wherefore, they pray that an appeal be granted by this court from the final order of the Lee Circuit Court overruling their motion to discharge, and that they be discharged from said indictments and from custody.

There is an alternative prayer in their petition for a writ of certiorari directed to the clerk of the Lee Circuit Court, commanding him to certify the transcript of the record of the proceedings in the Lee Circuit Court on their petition for discharge, and the further alternative prayer for a writ of prohibition directed to the judge. of the Lee Circuit Court and the prosecuting attorney of that circuit, prohibiting him from proceeding to try the petitioners. The record filed along with the petition shows a motion for discharge in the Lee Circuit Court, in which the facts, substantially as alleged in the petition here, are set up, and a response to that motion, in which the prosecuting attorney admits that the defendants were twice tried and convicted, as set up in their motion, and that the causes are now awaiting trial. He denies that the causes were continued, as therein alleged,

without the consent of the defendants, but alleged that the defendants did not move to have their causes set down for trial at the October, 1922, term of the Lee Circuit Court until it was too late to try these causes during the regular term of that court, and, upon the application of the defendants, the regular October, 1922, term of that court was adjourned until December 11, 1922, for the express purpose of trying these causes; that on the day set for the adjourned term of the Lee Circuit Court the regular term of the Phillips Circuit Court was in session, and the adjourned term of the Lee Circuit Court lapsed for that reason.

The prosecuting attorney alleges that the continuances complained of have been brought about by the consent and at the solicitation of the defendants. The response to the motion to discharge further set up that the State could not get ready to try the causes at that term of the court, for the reason that the witnesses who testified for the State in the two preceding trials, and on whom the State relied for conviction of the defendants, are now confined in the Arkansas State Penitentiary. The prosecuting attorney alleged that he had been informed that these witnesses have recently repudiated their former testimony, and that they will not, if the causes are now tried, testify to the same state of facts testified to by them in the two former trials. He further alleged that, since discovering the fact of repudiation of these witnesses of their former testimony, the State had not had time to ascertain the whereabouts of other witnesses who knew and would testify to substantially the same state of facts. He further alleged "that by reason of the fact that the homicide charged against the defendants was committed three and a half years ago, witnesses whom the State desires to have subpoenaed have become scattered over the State of Arkansas and in many other States, and that the State has not had sufficient time, by reason of said facts, to have the necessary witnesses brought to this court; that it will be impossible, or practically so, to locate the

present whereabouts of these witnesses, who are now living in various communities over the State, and to have them served with process sooner than the next regular fall term of this court; that the testimony of these witnesses is material, and that the State cannot be ready for trial at the present term of this court.''

The record shows that, on the hearing of the motion, the defendants (petitioners) called as a witness Ed Ware, one of the defendants, who testified, in substance, that he was one of the defendants indicted for murder in the first degree in the Phillips Circuit Court; that he had never consented to the continuance of his case. It is admitted by the State that the other defendants would testify the same.

The clerk of the Lee Circuit Court testified, in substance, that the April, 1922, term of the Lee Circuit Court was in session eleven judicial days out of a total of three weeks, or eighteen judicial days for that term. These cases were not set for trial at that term. On the eighth day of the term a motion was filed by the defendants to have the causes set down for trial. This motion was filed April 6, 1922. The record does not show any action taken on the motion. The October term, 1922, was in session ten judicial days when it adjourned until December 11, 1922. At that term the defendants filed a motion to set their cases down for trial. The cases were set for the second Friday. The second Friday the court was engaged in trying another case, State *v.* Cothran, which was not completed until the next day, Saturday. On that day, while the Cothran trial was proceeding, the court excused the regular panel of the jury for the term, except those engaged in the trial of the Cothran case. The court did not meet on December 11, the day fixed for the adjourned term. The record does not show that the cases against the defendants were continued until the second Monday in December. The record does not show for what purpose the adjourned day was to be held.

Judge J. M. Jackson, who was the judge of the Lee Circuit Court at the time the proceedings were had, testified, for the State, that a motion was filed on the sixth day of the October term by the defendants to set a day for the trial of their cases. The motion was granted, and the cases were set for the second Friday. On the second Friday the court was engaged in the trial of State *v.* Cothran, on trial for murder. The purpose of adjourning the Lee Circuit Court until December 11, 1922, was to try these defendants. Mr. Burk Mann was present as their attorney, and filed the motion and discussed the cases with the court. He said that he had not collected his fee and that on that account he consented in open court to the adjournment until December 11 for the purpose of trying these cases. The Phillips Circuit Court meets after the adjournment of, the Lee Circuit Court, and the Phillips Circuit Court was in session at Helena on December 11. That is the reason the adjourned term of the Lee Circuit Court was not held. After the jury in the Cothran case was impaneled, witness excused the remainder of the jury for the term. The cases against the defendants were not tried at the regular October term, for the reason that witness and the attorney representing the defendants had agreed on a special term of the Lee Circuit Court for December 11, 1922, to try them, and for the further reason that there was not sufficient time to try them. There was a full week of the Lee Circuit Court after the trial of the Cothran case. Witness was asked this question: "Q. Then it was not for the lack of time that they were not tried? A. Yes, it was. Q. Couldn't it have been tried? A. Not with Mr. Smith and you and the other attorneys in this case examining the jurors. I don't think, if you had had a full week, you could have started. Q. You had a full week after Saturday to try them? A. Oh, possibly we could have tried one—maybe two." The agreement to a continuance of the case was in open court.

Burk Mann was called in rebuttal by the defendants, and testified that he was one of the attorneys for the

defendants, and filed the motions requesting the setting of the cases for trial. At neither the April or the October terms, 1922, did witness consent to a continuance. Judge Jackson was mistaken. Witness did not consent to a continuance or to having the cases set down for trial at the adjourned term in December. Witness called the attention of the court to the filing of the motions at the time. As soon as the court got through with the Cothran case the court adjourned, and witness was not present at that time.

R. D. Smith testified for the defendants, in rebuttal, that he was one of their attorneys; that he had no knowledge of the continuance or of an agreement to continue, and did not himself agree or acquiesce in a continuance of the cases.

The written motions that were filed to have the cases set down for trial were as follows: "Come the defendants in the above styled cause by their attorneys, Mann & McCulloch, and Murphy, McHaney & Dunaway, and move the court to set their cases for trial for a day certain during the present term of court."

The order overruling their motion to discharge was as follows: "This cause being heard upon a motion to dismiss the prosecution and the response thereto, and the oral testimony introduced in support of the response, the court finds the facts to be that there was sufficient time at the April, 1922, term of this court to try the causes: that there was sufficient time at the regular October, 1922, term of this court to try the same; that there was not sufficient time at the adjourned day of the October, 1922, term of this court to try the same, because the Phillips Circuit Court was in session on said adjourned day; that neither the defendants nor any one acting for them consented to a continuance of said causes either at the April, 1922, term or at the October, 1922, term, nor did the defendants nor any one acting for them consent to the continuance from the October, 1922, term to the adjourned day thereof on December

11, 1922. The court finds the law to be that said defendants were not entitled to be discharged upon said motion. It is therefore ordered by the court that the motion for discharge be overruled, to which ruling of the court the defendants at the time excepted, and caused their exceptions to be noted of record.''

The petitioners filed a motion for a new trial, setting up that the ruling of the court was contrary to the law and contrary to the evidence. The motion was overruled, and the petitioners prayed an appeal to the Supreme Court, which the trial court denied, and they filed with the clerk of this court their transcript of the proceedings and the petition as above stated, praying an appeal to this court.

1. The Attorney General contends that the order of the trial court overruling the motion of the petitioners (hereafter called appellants) for their discharge is not a final order from which an appeal will lie, and hence the appeal is premature, and the appellants have not pursued the proper remedy. This presents the first question for decision.

The pertinent sections of Crawford & Moses' Digest are as follows: ''Sec. 3132. If any person indicted for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the, court having jurisdiction of the offense, which shall be held after the finding of such indictment, he shall be discharged so far as relates to the offense for which he was committed. unless the delay shall have been on the application of the prisoner.

''Sec. 3134. Nothing in the two preceding sections shall be so construed as to discharge any person who may have been indicted for any criminal offense, on account of the failure of the judge to hold any term of the court, or for the want of time to try such persons at any term of the court.

''Sec. 3135. If, when application is made for the discharge of any defendant, under either of the three pre-

ceding sections, the court shall be satisfied that there is
material evidence on the part of the State which cannot
be had, that reasonable exertions have been made to pro-
cure the same, and that there is just ground to believe
that such evidence can be had at the succeeding term,
the cause may be continued to the next term, and the
prisoner remanded or admitted to bail, as the case may
require.''

If the statute is mandatory, and the facts developed
at the hearing of the motion entitled the appellants to
be discharged, then the order of the trial court overruling
their motion to be discharged is a final order from which
an appeal will lie. This court has appellate jurisdiction
over final orders of all inferior courts of the State when
such order affects a substantial right in an action, and in
effect determines the action and prevents a judgment
from which an appeal might be taken, or discontinues the
action. Sec. 2129, C. & M. Digest, subdiv. 2.

This court, in *Batesville* v. *Ball,* 100 Ark. 496-500,
said: ''But it may be correctly said that a final judgment
from which an appeal will lie is one that either terminates
the action itself, or operates to divest some right in such
a manner as to put it out of the power of the court mak-
ing the order to place the parties in their former condi-
tion after the expiration of the term.  *  *  *  When a
lower court renders a final judgment upon which an exe-
cution may issue, or one dismissing the cause or the ap-
peal, it thereby puts it out of the power of such court
making the order, after the expiration of the term, to
place the parties in their former condition, and thereby
divests them of their rights, and such judgment or order
is therefore final, and an appeal can be taken therefrom.
*  *  *  When an issue of law or of fact is passed upon
by a court, and an order is made by it which determines
the rights of the parties in the action finally, so far as
that court is concerned, then such order becomes the
final determination of the cause, from which an appeal
will lie.''

If the facts existed which entitled appellants to invoke the provisions of the statute, then they had the right to their liberty when they moved the court having jurisdiction of their causes to discharge them, and proved the facts which entitled them to such discharge. The overruling of their motion would have the effect not only of depriving them of their liberty, to which they were entitled immediately from the time the motion was overruled, but also of subjecting them to the humiliation, annoyance and expense of a trial on the indictments. The statute, if mandatory, was intended to guarantee persons entitled to its provisions their liberty at the end of the second term of the court having jurisdiction of the offense after the finding of the indictment. They are entitled to their liberty at once at the end of such term. If the facts existed which entitled appellants to their discharge under the statute, then the effect of the court's order was not only to deprive them of the boon of liberty, but to subject them to all the consequences of a trial, or else to resort to some other remedy to prevent it. It is unnecessary here for us to determine whether appellants could have secured their liberty by habeas corpus or whether they could have prevented the trial court from proceeding against them by prohibition. Suffice it to say, they had the right to move the court having jurisdiction of these causes to discharge them from the indictments; and, if they are entitled to such discharge, the granting of their motion by the court would have given them their rights under the statute, whereas the overruling of their motion denied them such rights. No order or judgment that any court could have thereafter made would have placed them in the position and given them the rights they were entitled to at the time the order herein appealed from was made by the trial court. That order concluded all the rights they then had under the statute, if any, against them, and this is so even though, after the order overruling their motion, they may have resorted to habeas corpus in the same, or some other court, or to

this court for a writ of prohibition. The right of immediate freedom and a discharge from all the consequences. of the offense charged against them were certainly most sacred rights. They bear the brand of "Magna Charta."

Therefore, as before stated, our conclusion is that the order of the trial court overruling the motion of appellants was final, and their prayer for appeal is granted.

2. The next question is, did the court err in overruling appellants' motion to be discharged? We are not concerned with the policy of this law. That is for the Legislature. But, as its manifest purpose is to promote dispatch in the administration of justice, it must commend itself to the enlightened judgment of every one who loves law and order as a wise as well as humane enactment. "Justice delayed is justice denied," says Mr. Gladstone. It is highly important to the public weal that those accused of crime shall be brought to a speedy trial in order that, if guilty, public justice may be meted out without delay. This is as powerful a deterrent to the commission of public offenses as is the knowledge that condign punishment will follow when the lawbreaker is overtaken in his crime. It is also humane and just to the accused, who may be innocent, because it imposes upon the ministers of justice the obligation not to unnecessarily delay the trial of the charge which the State has lodged against him, and to afford him an opportunity to prove his innocence before he has been compelled to endure a prolonged punishment by imprisonment beyond the end of the second term of the court after the term in which he was indicted. These were doubtless the dominant considerations in the minds of the Legislature when they enacted this statute. It has been a part of our laws ever. since the State had an existence. These sections are found in the Revised Statutes and in all our digests. They are consonant with that provision of our Bill of Rights, art. 2, § 10 of the Constitution, which declares that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial," and also with art. 2, §

13, which declares that "he ought to obtain justice freely, and without purchase, completely, and without denial, *promptly, and without delay,* conformably to the laws."

This court, as early as *Stewart* v. *State,* 13 Ark. 720, in an opinion by Chief Justice WATKINS, construed the above provisions of our statute, and held that, where the conditions exist which entitle the accused to invoke the statute, the provisions of § 3132, *supra,* are mandatory. It would unduly extend this opinion to quote at length from the opinion of the learned Chief Justice in that case, but a careful reading of the opinion will disclose that the court reached the conclusion that, unless the delay to bring the prisoner to trial by the end of the second term, after the term at which he was indicted, was caused through some necessity in the practical administration of the law, the prisoner would be entitled to an absolute discharge without delay; that the prisoner would be entitled to a discharge where the delay of the State in bringing him to trial is for the want of evidence, "because the statute contemplates that, where the application is made and the grounds of it are well founded, the State may have a delay of one term more, if the judge be satisfied that there is material evidence on the part of the State which she has been unable to procure, but may procure by another term." As we interpret that decision, the prisoner will be entitled to his discharge under the statute for want of prosecution—that is, by reason of a failure on the part of the State to demand trial and produce her evidence against the prisoner—unless the delay was for some other reason than simply a failure on the part of the State to demand a trial and bring forward its evidence. It is such want of prosecution on the part of those intrusted with the due administration of the law that this statute condemns by discharging the prisoner upon his application and a showing that the State had failed to prosecute as this statute required. Where he makes such showing, the court trying the issue is vested with no discretion in the matter. But to entitle the

prisoner to such discharge he must place himself in an attitude of "having demanded a trial, at least in an attitude of resisting postponement."

In the later cases of *Dillard* v. *State,* 65 Ark. 404, and *Fox* v. *State,* 102 Ark. 393, the statute was again invoked and treated as mandatory, and the case of *Stewart* v. *State, supra,* cited approvingly. In each of these cases it was held that the prisoner was not entitled to his discharge because he had failed to bring himself within the terms of the statute, as was also the case of *Stewart* v. *State, supra.* The interpretation of the statute as given by our court in *Stewart v. State, supra,* is well supported by the decisions in other jurisdictions that have similar statutes.

In the case of *People* v. *Morino,* 85 Cal. 515, 24 Pac. 892, it is said: "The statute is imperative. 'The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed.' Here no cause for delay was shown. It was enough for the defendant to show that the time fixed by the statute, after information filed, had expired, and that the case had not been postponed on his application. If there was any good cause for holding him for a longer time without a trial, it was for the prosecution to show it. The court could not presume it. Under the facts as shown the case should have been dismissed, and it was error to deny the motion."

*In re Begerow,* 133 Cal. 439, 65 Pac. 828, after referring to and approving the doctrine of the Morino case, the court, among other things, said: "And justly it is deemed a matter of the most importance. The government cannot take property from the meanest inhabitant without just compensation paid or tendered in advance; but it takes his liberty, which, it has been justly said, is to some extent to take his life, upon a mere charge of crime. This is necessary that society may be protected. But necessity is the only excuse, and to imprison beyond what is absolutely necessary is tyrannous and oppressive. And this is precisely what the State has

covenanted with each inhabitant that it will not do." The prisoner was discharged.

In *State* v. *Kuhn,* 154 Ind. 450, 57 N. E. 106, it is said: "When the prisoner brings his case within the limits of the statute, his right to discharge becomes absolute. The courts seem united upon this point." And again: The statute "making effective constitutional guaranty of a speedy trial confers an absolute right on a person charged with crime and imprisoned to be set at liberty unless tried within the time limit." In this case it was held that the judgment discharging the prisoner, under a statute similar to ours, will not be reversed on the ground that the time of the court was occupied in the trial of other causes, where it was shown that at least eight days of the third term after defendant was admitted to bail were occupied in the trial of civil causes. The prisoner was discharged.

In *State* v. *Keefe,* 98 Pac. 122, a statute was under review which reads as though it might have been copied from our statute, or the Missouri statute, from which our statute was probably borrowed. The court concluded a most learned and exhaustive opinion as follows: "The court decides that the fact of defendant's imprisonment in the penitentiary, under the circumstances set forth in the agreed statement of facts, does not constitute a sufficient defense to the application of the defendant for his discharge; that §§ 5382 and 5384 apply to the defendant, and, upon the facts, the defendant has not had a speedy trial as provided in the Constitution." See also *Hollandsworth* v. *Godby,* 117 S. E. 369.

In *State* v. *Wurdeman,* 246 S. W. 189, the Supreme Court of Missouri handed down the opinion December 6, 1922. It was pleaded that there was time to try the case, and the demurrer admitted that fact, and also admitted that the defendant had made no application for delay. The court, among other things, said: "The statute is mandatory, and imposes upon the State the duty to bring the defendant to trial before the end of the

third term of the court after the term at which the indictment was found. * * * These are criminal statutes, and should be strictly construed in the interest of the liberty of the citizen. The statute says the defendant 'shall be entitled to be discharged' save in the two excepted situations, *supra*. Usually the use of the word 'shall' indicates a mandate, and unless there are other things in a statute it indicates a mandatory statute. Especially is this true in a statute calling for strict construction. * * * A defendant is entitled to the pound of flesh granted to him by the mandatory language of the statute.''

3. Such is the law. What are the facts? For the sake of clarity we will briefly restate them here as found by the court. There was sufficient time at the April term, 1922, to try the causes. There was sufficient time at the regular October, 1922, term, but not sufficient time at the adjourned day of the October, 1922, term, because the Phillips Circuit Court was in session on that day. Neither of the defendants, nor any one acting for them, have consented to a continuance of the causes at either the April or the October terms, 1922, nor to the continuance from the regular October term, 1922, to the adjourned day on December 11, 1922. The court might have found the further facts to be that, even at the time of the application of the appellants for their discharge, the State did not show that there were other witnesses who would give material evidence in its behalf to prove the guilt of the defendants, and that reasonable exertions had been made to secure such evidence and failed, and that there was just ground to believe that such evidence could be had at the next term if the cause were continued to such term. True, in the response to the application for a discharge the State set up that it had not had time to ascertain the whereabouts of other witnesses who knew and would testify to substantially the same state of facts upon which the defendants had been formerly convicted. These allegations of the response were the

merest drag-net. They did not name a single witness, nor set up any facts to which any witness would testify if the cause were continued. They did not designate any place where a single witness could be found. Taken as a whole, the allegations of the response were but tantamount to saying to the court, "There are some witnesses somewhere scattered throughout the State, who, if found, will furnish material evidence for the prosecution, and, if the cause is continued, the State will endeavor to produce them." These allegations were too vague and indefinite to furnish grounds for the refusal of the application, under the provisions of § 3135, *supra*. They were equivalent to no more than a pronouncement and promise upon the part of the State that, if the cause were continued, it would enter upon a search for evidence. But the State had no right at that term to continue for want of evidence; that right had been lost by failure to ask such continuance at the previous October term, 1922.

The facts found by the court show conclusively that the delay in the prosecution was not on account of the failure of the judge to hold any term of the court, because at the time the regular October, 1922, term was adjourned until December 11, 1922, there was sufficient time of the regular term to try the causes. Likewise, there had been sufficient time at the previous April, 1922, term to try the causes. So the delay in prosecution could not have been based upon the exceptions contained in § 3134, *supra*.

The court expressly found the facts to be that neither the defendants, nor any one acting for them, consented to the continuance either at the April or October, 1922, terms. The delay to bring the appellants to trial could not have been caused by the application of the prisoners for continuance. The motions asking the court to set the causes down for trial at both the April and October, 1922, terms, the testimony, and the findings of the court based thereon, show that the appellants were ready for and demanding trial. It must be held that such was the

effect of the findings of the court, and that neither the appellants nor any one acting for them have consented to a continuance. The undisputed facts are that the court, on the day the appellants' causes were set for trial, was engaged in the trial of another murder case, which trial was not concluded until the next day, Saturday, and before that trial was ended the judge discharged the regular panel of the petit jury for the term. This conduct of the judge was equivalent to an announcement to the attorneys and all parties in attendance upon the court that the court would not hear any jury trials after the trial then in progress was concluded. If such was not the purpose of the court, and the presiding judge would have tried the appellants' cases, a sense of justice and fairness should have prompted him to notify appellants' counsel of that fact. The act of the court shall prejudice no one. Therefore appellants cannot be charged, after this act of the court, with a lack of diligence in demanding a trial, or failure to protest against the court's action. At any rate, the finding of the trial court on the motion to discharge, to the effect that the appellants were not consenting to a continuance of their cases, is sufficient to show that they had exercised due diligence and were demanding a trial at the regular October term, 1922. This finding of the trial court was based upon the undisputed evidence, because when these prisoners filed their motions asking for a trial they *ipso facto* put themselves on record as resisting a postponement of the cases. Therefore denial of the application could not have been bottomed on the exceptions contained in § 3132, *supra.*

Nor was there a continuance from the October term on account of failure of the State's evidence so as to entitle the State to a continuance to another term to procure evidence. It is undisputed that the cause was postponed at that time, not on motion of the State to procure evidence, but merely because the trial judge saw fit to postpone until the adjourned day of the court,

which failed because of the holding of the Phillips Circuit Court on that day. Therefore the denial of the application could not have been predicated upon the provisions of § 3135, *supra*. The truth is there was a failure of prosecution, pure and simple, because the State did not demand a trial and bring forward its evidence in support of the charge made in the indictments.

The conclusion of law of the trial court was not based upon its findings of fact, but was directly contrary to such findings. We are bound by the court's findings of fact, but not by its conclusion of law. The court erred in its conclusion of law. The law applicable to the facts must be declared, else the appellants will be deprived of the right to a speedy trial, which the framers of our Constitution and the framers of this statute purposed that every person charged with a public offense should have. That every such person has such right, under constitutions and statutes similar to ours, is, so far, proclaimed by the authorities with one voice.

The order of the trial court overruling appellants' application for discharge is therefore reversed, and an order will be entered here directing the sheriff of Lee County to discharge the appellants from custody.

HART, J., (dissenting). Judge HUMPHREYS and myself dissent on the ground that, under the testimony of the defendants' own attorneys, the majority opinion is a departure from the rule announced by the former decisions of this court.

In *Stewart v. State,* 13 Ark. 720, decided in 1853, the statute in question in this case was first construed. In discussing the statute Chief Justice WATKINS said: "The judicial officers furnished by the State for the trial of all offenders are presumed to be honest and capable. We have seen what care the State by her legislation has taken to furnish the opportunity for a speedy trial. We

cannot shut our eyes to the fact, known to all who are acquainted with the administration of justice, that where the crime is of magnitude, delays diminish the chances of conviction, and with that hope are usually sought or acquiesced in by the accused. And for that reason we think the spirit of the law is that, for a prisoner to be entitled to his discharge for want of prosecution, he must have placed himself on the record in the attitude of demanding a trial, or at least of resisting postponements.''

In *Dillard* v. *State,* 65 Ark. 404, it was said that the defendant was not entitled to his discharge where he was consenting to or acquiescing in the delay.

Again in *Fox* v. *State,* 102 Ark. 393, decided in February, 1912, it appears that the defendant did not demand a trial or resist the order for a continuance, and it was held that the circuit court was correct in refusing to dismiss the case for want of prosecution.

The opinion in the Stewart case was written by a very able and clear-headed judge. The language used plainly and unequivocally conveys its own meaning. This construction has been followed by our courts for 70 years, and no useful purpose can be served at this late date in considering and reviewing decisions of other courts construing similar statutes.

The circuit court found the facts to be that neither the defendants nor their attorneys consented to a continuance for them, and found the law to be that they were not entitled to their discharge upon their motion.

We think that the learned circuit judge was correct in his declaration of law as applied to the facts testified to by the attorneys for the defendants. It was not necessary, under our former decisions, for the defendants to consent to a continuance to prevent their discharge under the statutes. If they acquiesced in or failed to resist the order for a continuance, they were not entitled to be discharged for want of prosecution.

On the part of the defendants their motion filed on the 16th day of October, 1922, was first introduced. It

reads as follows: "Come the defendants in the above styled cause by their attorneys, Murphy, McHaney & Dunaway, and Mann & McCulloch, and moved the court to set their case for trial for a certain day during the present term of the court."

We next come to the testimony of Burk Mann, from whom we quote the following:

"Q. Do you remember having a conversation with the judge the day court adjourned, at the October term, in which he asked you why you did not call up your motion? Mr. Andrews: We object; Judge Jackson didn't deny it, he said he didn't remember it. Q. Did you have such a conversation with him? A. Yes sir. Q. What was your reply to that? A. The reason I remember that so definitely, I was at my office on Saturday morning, I think it was, the Cothran case was wound up, and I was going over to see lawyer Smith, and just as I went into the Lesser building I met Scipio Jones, I think he had been over to the courthouse, and Scipio and I walked up the stair steps, and the judge was coming down. I ran in to Judge Jackson, and he says, Why wasn't you there to call up your motions? Well, it worried me, because I didn't think it was necessary to call them up after the motions had been filed asking that the cases be set down for trial, so I went up to Mr. Smith's office and I think discussed the matter with him to some extent, with Scipio Jones, and I went back to my office, and I think Mr. R. D. Smith and Scipio Jones came on here to the courthouse and looked up the record. Q. Then, in no way did you consent or connive at a continuance at these terms? A. I did not. Q. Do you know what the understanding was with reference to these cases, with reference to continuing it or trying it? A. My understanding was, we had this statute in view, which states if a defendant is not brought to trial by the end of the second term he is entitled to a discharge, and we had that statute in mind when we were filing these motions; and I never consented to any continuance, and never acquiesced any more than

I was forced to acquiesce. Q. You were in the attitude, at all times, of demanding a trial, were you? A. Yes sir; and I filed these motions that these cases be set down for a day certain. Q. Were you present in the court room the day they were set for the second Friday? A. I expect I was; yes sir, that is at the October term, when it was set for the second Friday. Q. The cases were not called on that day, were they? A. No sir. No witnesses were ever subpoenaed for the State, that I have any recollection of. Q. Is there anything else you want to state of your own accord? A. That's all I know."

On cross-examination Mann admitted that he filed the motion set out above, and that McHaney was not present at the October term, 1922, of the Lee Circuit Court. In this connection it may be stated that McHaney was one of the attorneys for the defendants when they were originally tried and convicted for murder in this case and also when the cases were reversed by this court for errors committed by the trial court. See *Ware* v. *State,* 146 Ark. 321. McHaney is still attorney for the defendants.

We quote from the cross examination of Burk Mann the following: "Q. Now, following the filing of your motions he set the cases for trial on the second Friday of the term? A. Yes sir. Q. And on the second Friday the case of the State of Arkansas against Guy Cothran, was— COURT: Don't go over that. Q. I want to ask you whether or not, as counsel for the defendant, at that term of court, you made any request of the court, after that day passed, for the trial of these cases? A. No sir, as soon as they got through with the Cothran case, why, he adjourned court; I wasn't here that morning."

Viewing this evidence in the light most favorable to the defendant, it appears that, upon application of one of their attorneys, the cases were set down for trial on a day certain. On the day set for the trial the court was engaged in trying another murder case. The record shows that the defendants were represented by four

.firms of attorneys, and that only one of their attorneys makes any pretense of having been present in court on the day the cases were set for trial. It appears inferentially that the presiding judge was well acquainted with all of these attorneys. Burk Mann says that he "expects" he was in court on the day the cases were set for trial. He evidently knew that his associates were not present and that the cases were not expected to be tried. Otherwise the absence of his associates, and especially the absence of McHaney, would have caused him to have had a definite recollection about the matter. The murder case on trial was continued throughout that day and was not finished until some time the following day, which was Saturday. Mann admits that he did not attend the court on Saturday, and it does not appear that any of the other attorneys for the defendants were present. It was the duty of some of the attorneys for the defendants to have been present or to have been excused by the court. The presiding judge, being well acquainted with all of the attorneys for the defendants, could look over the court room and see that they were not present, and that they were absent without leave of the court. Under these circumstances he was justified in continuing the cases and considering the attorneys for the defendants in the attitude of acquiescing in the continuance, or at least in not resisting it. To hold otherwise places upon the trial court the burden of keeping track of the lawyers having business in court, instead of requiring the lawyers to be in attendance upon the court.

The nub of the whole matter is that, under the majority opinion, attorneys for a defendant may have a case set down for trial on a certain day, and if upon that day the court is engaged in the trial of an unfinished case, the attorneys for the defendant may, without leave of the court, absent themselves until the court notifies them that it is ready to proceed with their case.

If, under the circumstances detailed above, the court could not continue the cases without notifying the at-

torneys of the defendants, it necessarily follows that it could not proceed to try the cases without further notice to them. This course of proceedings would soon cause the trial court to lose control of the docket. Persons accused of crime as well as other litigants must keep themselves informed as to the progress of their cases, and, in order to be discharged for want of prosecution, they must at all times keep themselves in an attitude of demanding a trial or resisting a continuance.

The only other testimony bearing upon this question is that of R. D. Smith, one of the attorneys for the defendants. The whole of his testimony is as follows:

"Q. Judge Jackson testified this morning that you were in the court room the morning the cases were continued by agreement, to the adjourned term. Did you have any knowledge of any continuance or agreement, or did you agree or acquiesce to a continuance of the cases? A. No sir, I did not."

It is apparent that his testimony is entirely of a negative character and does not show in any manner that the defendants were resisting the order for a continuance. Moreover, the record shows that at the April term, 1922, the defendants did no more than file a motion to set their cases for trial, and it appears that no action was taken on the motion. Their failure to ask a ruling on their motion is the highest evidence of their intention to acquiesce in the action of the court in not trying their cases. In fact, it amounts absolutely to acquiescence. Suppose a presiding judge should continue a case in the presence and hearing of a defendant and his attorneys, without objection or protest on their part, their silence would amount to acquiescence, in all reasonable minds. If such acquiescence can be changed to resistance because they have filed a motion to set the cases for trial, which the court has not acted upon, and upon which no ruling has been asked, it would be a very easy matter to set a trap for a busy or unsuspecting judge, and no sanctity and protection would be afforded to their judgments.

' In our judgment, the rule laid down in the majority opinion as applied to the facts testified to by the defendants' own attorneys, has not heretofore been the law in this State, and, believing that such a rule will tend to hamper the trial courts in the discharge of their duties, we respectfully dissent.