BISHOP *v.* STATE.

4407 193 S. W. 2d 489

Opinion delivered April 8, 1946.

*Sullins & Perkins,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. Appellant sought to invoke § 3968, Pope's Digest, to secure a discharge from two pending informations. The trial court denied appellant's motion; and there is this appeal.

## FACTS

On March 13, 1943, four separate informations were filed, each charging appellant with the crime of murder alleged to have been committed on January 17, 1943. Information No. 1 charged appellant with the murder of Lyle Graham; information No. 2, with the murder of Paul Phillips; information No. 3, with the murder of Lyle Carter; and information No. 4, with the murder of Howard Nail. In July, 1943, appellant was tried on informations 1 and 2, and given life imprisonment on each conviction. He is now serving sentence; and has never been brought to trial on either information 3 or 4. On June 15, 1945, appellant filed motion in the circuit court to be dis-

charged from the offenses charged in informations 3 and 4: the basis of his motion being § 3968, Pope's Digest, which reads: "If any person indicted for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense, which shall be held after the finding of such indictment, he shall be discharged so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner." Among other allegations in the motion, there is this one: "Defendant further says that he has been anxious for trial on said charge ever since it was filed; that said cause has never been continued at his request or with his consent, and that more than two terms of court have passed since the filing of said information, at any of which terms of court, this case could have been tried, and that by reason of the failure of the prosecuting attorney to bring said cause to trial, he is entitled to discharge from said information . . ."

Appellant's motion was resisted by the State; and Hon. Jeff Duty, prosecuting attorney, testified as follows: "My name is Jeff Duty. I am prosecuting attorney of the 4th Judicial District. I prosecuted Tuck Bishop in the two cases which were tried. Bishop was convicted and the jury assessed a life sentence in each case. The testimony in both cases brought out the facts that there were only two actual living eyewitnesses to the killings. These witnesses were Ed Kendrick of Lowell and Bert Plummer of Springdale. At the time of the second trial of Tuck Bishop both Ed Kendrick and Bert Plummer were members of the armed forces of the United States, Ed Kendrick being a member of the United States Army Air Forces and Bert Plummer a member of the United States Marines. To prepare for the trial of the second information charging Bishop with the killing of Lyle Graham, it was necessary to bring Ed Kendrick to Fayetteville from Randolph Field, Texas, and to bring Bert Plummer from the Marine Base in San Diego, California. The War Department granted these men ten days leave of absence in order to appear and testify. At

the conclusion of the last trial both of these men had to leave Fayetteville at once in order to arrive at their respective posts on time. While Ed Kendrick was on his way back to the post in Texas, his unit moved to a port of embarkation and he joined the unit and was shipped overseas to the Mediterranean Theater of War. Bert Plummer arrived in San Diego and his unit, the Second Marine Division, was immediately shipped to New Zealand and thence to Tarawa, and he is now and has been all the time with that division. At present he is on the mainland of Japan and has not been in this country since leaving Fayetteville. Ed Kendrick was reported missing in action during the last stages of the battle in Italy. That report has not been changed. However, he has not been at this time reported killed in action or as dead. Ed Kendrick has not been in the United States since leaving with his unit. These men being the key witnesses in the case, it was and is impossible for the State to go to trial without at least one of the men present. The other trials were conducted after special venires of juries had been secured and to have tried the other informations against Tuck Bishop at the conclusion of the first two trials would have necessitated special jury venire and it was impossible for the two soldiers to remain in Fayetteville longer than four hours after the conclusion of the last trial, due to having to report at their respective military posts. Both of the other trials consumed at least three days each. Efforts have been made to ascertain when either of the key witnesses can be present in court; and in all probability Bert Plummer will be returned to this country in the early part of 1946 in time to testify at the next term of court, which convenes in April, 1946. . . . The whole case revolves around and depends on the two soldiers named above.''.

On December 5, 1945, the circuit court denied appellant's motion; and there is this appeal.

## OPINION

Section 3968, Pope's Digest, is not a new law. Along with §§ 3969-70-71 it has been the law since the early days

of Arkansas' statehood. These four sections were §§ 169-70-71-72, respectively, of Chapter 45 of the Revised Statutes of 1837. Section 3968 has been considered by this court in many cases, some of which are: *Stewart* v. *State,* 13 Ark. 720; *Dillard* v. *State,* 65 Ark. 404, 46 S. W. 533; *Fox* v. *State,* 102 Ark. 393, 144 S. W. 516; *Ware* v. *State,* 159 Ark. 540, 252 S. W. 934; *Fulton* v. *State,* 178 Ark. 841, 12 S. W. 2d 777; *Lee* v. *State,* 185 Ark. 253, 47 S. W. 2d 11; *Smith* v. *State,* 201 Ark. 1185 (not reported in full in Arkansas Reports), 146 S. W. 2d 158; *Grubbs* v. *State,* 182 Ark. 1185 (not reported in full in Arkansas Reports), 30 S. W. 2d 833.

We have held that a prisoner in the state penitentiary is entitled to invoke this statute (*Fulton* v. *State, supra*); and that the order denying the motion for discharge is a final and appealable order (*Ware* v. *State, supra*). This statute is applicable to the present case. The only questions are: (1) whether the facts in this case, as testified to by the prosecuting attorney, are sufficient to justify the application of § 3971, Pope's Digest; and (2) if so, what should be the order of continuance.

Section 3971, Pope's Digest, reads: "If, when application is made for the discharge of any defendant, under either of the three preceding sections, the court shall be satisfied that there is material evidence on the part of the State which cannot be had, that reasonable exertions have been made to procure the same, and that there is just ground to believe that such evidence can be had at the succeeding term, the cause may be continued to the next term, and the prisoner remanded or admitted to bail as the case may require."

We believe the State, by the testimony of the prosecuting attorney, made a satisfactory and sufficient showing to the effect that: (1) there is material evidence on the part of the State which could not be had on December 5, 1945, the date of the order here assailed; (2) that reasonable exertions had been made to secure the testimony; and (3) that there is just ground to believe that such evidence can be presented at a trial of the appellant at the

April, 1946, term of the Washington Circuit Court. The military authorities sent the witness, Plummer, to testify in the trial against the appellant in July, 1943. Now, since hostilities have ceased, it is reasonable that the prosecuting attorney may secure the witness, Plummer, to appear and testify some time during the April, 1946, term of the circuit court, which commences on the fourth Monday in April (§ 2832, Pope's Digest). In *Ex parte* Rash, 64 Idaho 521, 134 Pac. 2d 420 (decided February 20, 1943), the Supreme Court of Idaho, in construing a statute of that state, similar in some respects to §§ 3968 and 3971, Pope's Digest, took an excellent attitude on the right of the accused to a speedy trial. Said the Idaho court: "The present stage of the war or present consequent demand for service of all man and woman power in activities directly contributing to our successful prosecution or assistance in the prosecution of the worldwide conflict, or the fact that during certain seasons of the year farmers should not be called upon to sacrifice their farm activities, does not authorize unlimited continuance of criminal cases or cessation of judicial functions, an integral and constitutional part thereof being speedy jury trials. . . . We believe that due to the exigencies of the times we are justified in the present instance in going directly to the essential point involved, namely, the right of petitioner to a speedy trial."

The Idaho court remanded the accused to the trial court with directions to afford him a speedy trial under the applicable Idaho statutes. There are annotations in 58 A. L. R. 1150 and 118 A. L. R. 1037 which incidentally concern the rights of an accused to a speedy trial, and the methods to obtain the same. We are inclined to model our order here along the same general lines as did the Idaho court in the case cited.

We, therefore, modify the judgment of the circuit court to this effect: Under § 3971, Pope's Digest, appellant is entitled to a trial on the pending informations at some regular or adjourned day of the April, 1946, term of the Washington circuit court; and if, through delay on

the part of the State, such trial be not accorded him, then he is entitled to be discharged under § 3968, Pope's Digest.

As so modified, the judgment of the circuit court is affirmed at the cost of the appellant.