THOMAS AND CARTER *v.* STATE.

Criminal 4084

Opinion delivered May 2, 1938.

*W. B. Scott* and *C. B. Nance,* for appellants.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

MEHAFFY, J. The prosecuting attorney filed information in the circuit court of Crittenden county charging appellants with rape. They were tried and convicted and sentenced to death. They prosecute this appeal to reverse the judgment of the circuit court.

The evidence on the part of the state showed that F. E. Brading and Miss Wilson, the prosecutrix, on the night of December 25, 1937, crossed the Harahan Bridge and went down the road that goes to the Government fleet. They saw a car where persons were endeavoring

to fix a tire, and Brading parked his car facing the Government fleet; that he got out of his car and took off his coat, and just as he took off his coat and pitched it on the back of the front seat the tall negro Thomas came up to his left side and asked him for a match, when Brading replied that he had a match the negro Thomas told him to be still, and pulled an open knife on him, and he then noticed the other negro Carter on the right, at the right door, where Miss Wilson was sitting. She was sitting on the front seat. Carter opened the right front door, and the negroes talked a minute or two and then searched Brading. Miss Wilson was told to get out of the front seat by Carter. The negroes tried to make Brading pull off his clothes and tried to strip him down. He stayed on his feet a little bit, and then the negro in the car called to the other negro, and he raised up and turned loose of Brading and made a pass at him with the knife, and Brading hit him and then ran to the guardhouse two or three hundred feet up the hill to get help. When he got to the plant he got some men, and they started to look for Miss Wilson and the negroes. When Thomas first came up to the car he was right in Brading's vision, and he knew his features, and knew he had been drinking. Brading had met Miss Wilson at her home in Memphis, Tennessee, on the night of December 25, around 6 o'clock. He didn't know exactly the time they left Miss Wilson's home. He didn't park his car, but went to turn around and start back. He didn't see the party fixing his tire when he drove under the bridge. As he turned his car and started back he saw these negroes.

Miss Wilson was about 18 years of age. She testified that she was acquainted with Brading, and had been going with him for about six or seven months, and that he came to her home Christmas night about 6 o'clock, and that they left the house around 8 o'clock. They drove over to Arkansas, and didn't have any particular place in mind, and she and Brading had driven down the Government fleet road, and had meant there to turn around; that while they were there the two negroes came up and asked for a match, and the negroes made them get in

the back seat. The tall negro Thomas got in the back seat with them, and Carter did the driving. Carter made some vulgar remarks to her. They had driven for a short distance, when they came to a mudhole and the car got stuck. Brading got away from the negroes, and they dragged her out of the car. The negro Thomas took her in the woods, threw her down and had sexual intercourse with her, and the time he consumed was approximately two hours. After he had finished with her he picked her up from the ground and told Carter that when he got through with her to throw her in the river. They both stayed with her for awhile, and Thomas left and told Carter he could do whatever he wanted to with her, and then Carter dragged her to a hill, threw her down on the ground, where he had sexual intercourse with her. During the time she was with the two negroes she tried to talk them out of mistreating her, but did not call for help or try to attract attention. While the negroes were taking her across the field she tore off her clothes and her shoes and her jewelry and anything that she had threw it down in order that she might leave a trail, hoping it might lead people to her. That the condition of her clothes was all right except her underclothes. Her top clothes were all right.

Dr. James G. Coe, a physician, testified that he had examined Miss Wilson when she was brought to the hospital, and treated her, and testified as to the treatment he prescribed.

Other witnesses testified about the negroes being in the vicinity, and about them having whiskey. Roy Curtis, a deputy sheriff, testified that he went to the scene and checked the plat of the surrounding country with Mr. Bonds, and found footprints where Mr. Brading's car had stuck in the mud, and followed these footprints, that they went back toward the highway and were within a couple of yards of the highway. Another deputy sheriff, Charlie Goad, testified as to tracking the assailants and the capture of Frank Carter. Howard Curlin, the sheriff of Crittenden county, testified that he was informed and called a posse, and they caught Thomas about two o'clock

a. m., that he was at the scene of the alleged crime, but didn't follow any tracks. Saw Miss Wilson when she was brought in about 2:20 a. m., she was pretty badly used up. They took her to a hospital in Memphis. She gave him a description of the negroes.

After the negroes were captured they admitted the details, but denied the assault.

The physician testified as to lacerations and bruises on Miss Wilson.

The appellants testified admitting that they went over to Crittenden county on the night of December 25, stopped at Romine's liquor store at the end of the Harahan Bridge and got a half pint of whiskey. They drank it. Thomas said that he was drinking all day Christmas. They walked along the Harahan viaduct, and Thomas went down to attend to a call of nature. That when he got under the bridge he walked up to car which was parked there; that he and Carter decided to see what the couple, Brading and Miss Wilson, had in their possession. When they came to the car the man was standing on the outside of the car fastening up his pants. Carter got in the car and drove it up the side of the levee, and while they were stopped talking Mr. Brading ran away. That he told Carter to come on and get out of the woods, they were liable to get killed. He denied attempting to attack the girl and denied having intercourse with her. Carter testified to substantially the same facts as Thomas. He said further that Miss Wilson was in the back seat of the car and Brading standing by the side of the back door pulling his clothes up. He asked Brading if he could go back to town with him, and Brading said for him to get in the front seat because the young lady was on the back seat. He got on the front seat and drove the car up the road a piece, got scared, cut the motor off and got out of the car. That after Brading ran away Miss Wilson asked him not to let anybody bother her, and he told her he wouldn't. He denied assaulting her or having intercourse with her.

It is first contended by the appellants that the Initiated Act adopted by the people November 3, 1936,

provided, in § 31, that when any circuit court is duly convened at a regular term the same shall remain open for all criminal proceedings until its next regular term, and may be in session any time the judge thereof may deem necessary. That section of the act reads as follows: "Section 31. *Court open at all times for criminal proceedings.* When any circuit court is duly convened for a regular term, the same shall remain open for all criminal proceedings until its next regular term, and may be in session at any time the judge thereof may deem necessary; but no such session shall interfere with any other court to be held by the same judge. If the time has not been previously fixed by the court, or unless in such cases they are required by law to take notice, all interested parties shall receive notice of any proceeding affecting their rights, and shall be given time to prepare to meet such proceeding."

The appellants demurred to the jurisdiction of the court and contended that the court in Crittenden county was not legally in session because the court in Clay county had not adjourned, but had taken a recess, and that, therefore, there could be no legal term held in Crittenden county at that time. The act expressly provides that the court shall remain open for all criminal proceedings until its next regular term, and may be in session at any time the judge thereof may deem necessary, but no such session shall interfere with any other court to be held by the same judge. It will be observed that the act applies to any circuit court and all circuit courts and provides that the same shall remain open. Therefore, the proper procedure would be to take a recess and not adjourn the court. It is true the judge could not hold a session at one place at any time other than at the regular term if it interfered with any other court to be held by the same judge. But the record here clearly shows that the holding of court in Crittenden county did not in any way interfere with the court in Clay county or any other court. The court in his order expressly stated: "It is within the personal knowledge of the presiding judge that the Second Division of the Second Judicial District is not

at this time in session at any other point in said district, it having recessed in Piggott, Arkansas, on the 4th day of January, 1938, said Piggott being the county seat of the Eastern District of Clay county, Arkansas.''

The Initiated Act was adopted November 3, 1936, an overwhelming majority voting for said act, and the constitutionality of said act has been before this court and it has been upheld several times. It will serve no useful purpose to review those decisions, but attention is called to *Penton* v. *State,* 194 Ark. 503, 109 S. W. 2d 131; *Smith and Parker* v. *State,* 194 Ark. 1041, 110 S. W. 2d 24; *Brockelhurst* v. *State,* 195 Ark. 67, 111 S. W. 2d 527; *Brewer* v. *State,* 195 Ark. 477, 112 S. W. 2d 976.

The undisputed evidence in this case shows that the appellants were present, and went to the car where Brading and Miss Wilson were, and that both of them were drinking, and the evidence on the part of the state shows that they began to strip Brading, took charge of his car, drove it some distance, and then took Miss Wilson out and both of them had intercourse with her. Her statement as to this is corroborated by the doctor who testified as to her lacerations and bruises and to her condition when she was taken to the hospital. It is true appellants denied that they assaulted her. But we have uniformly held that in testing the legal sufficiency of evidence to support a verdict it must be viewed in the light most favorable to the state, and if there is any substantial evidence to support the verdict the judgment will be affirmed.

This court has held, in the several cases to which attention is called first in this opinion, that the law authorizing information to be filed by the prosecuting attorney is a valid enactment.

The evidence is ample to sustain the verdict, and the judgment is affirmed.