CHARLES GARDNER *v.* STATE OF ARKANSAS

5720                                                    481 S.W. 2d 342

Opinion delivered June 12, 1972

*Ruud L. DuVall,* for appellant.

*Ray Thornton,* Atty. Gen., by: *John D. Bridgforth,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Charles Gardner was arrested on April 9, 1971, and lodged in the Craighead County Jail at Jonesboro. On April 13, 1971, he was charged on information filed by the prosecuting attorney, with two counts of violating the Arkansas Hot Check Law in Craighead County, Arkansas. He was unable to make bond in the amount of $1,500 so he remained in jail. When his case finally came on for trial on November 15, 1971, he moved for a dismissal of the charges pending against him for the reason that he had been denied the right to a speedy trial under the Sixth Amendment of the United States Constitution, and under Art. 2, § 10 of the State Constitution. The motion to dismiss was denied by the trial court and Gardner has appealed. He contends that two terms of the Craighead County Circuit Court had expired while he was incarcerated in the county jail and he was entitled to a dismissal of the charges against him as a matter of law under Ark. Stat. Ann. § 43-1708 (Repl. 1964). Gardner also contends that the trial court erred in not giving him a speedy trial in compliance with this court's per curiam order of June 28, 1971, rendered under authority of Act 470 of 1971.

The problem involved here is common to several judicial circuits in Arkansas as well as courts in other states. The overall problem is congested dockets both criminal and civil. To meet the expanding caseload in the various judicial circuits in Arkansas, some of the circuits have been divided into separate divisions with separately elected judges for each division. Craighead County is a part of the second circuit which was divided into three divisions by Act 505 of the Acts of 1965, Ark. Stat. Ann. § 22-322.10 (Supp. 1971). The statute designated the divisions as first, second and third divisions with the first division designated as criminal and the other two as civil. A provision of this same Act digested as § 22-322.11 provides as follows:

"Judges elected to specific numbered divisions—Each may serve in other divisions.—The three (3) Circuit Judges shall hold the courts in the respective divisions at the times and places as herein provided, and their successors shall severally do the like. The Judges shall be nominated and elected to a specific numbered division of the court, but this shall not be deemed an enlargement nor a diminution of their powers as Circuit Judges to try and dispose of any litigation or matter which falls within the jurisdiction of the Circuit Court."

This Act further provides (§ 22-322.12):

"The Circuit Court Clerks of each of the courts in the several counties shall keep and maintain two [2] separate dockets, one [1] for criminal cases and one [1] for civil cases, and each case filed shall be entered in the proper docket. The Judge of the First Division shall preside over cases assigned to the Criminal Docket and the Judges of the Second and Third Divisions shall preside over cases assigned to the Civil Docket. During each term of either division of the Circuit Court the presiding Judge, by appropriate orders, may assign in the first instance, or reassign, any case, Criminal or Civil, from one docket to the other as may be found best for the dispatch of business. The Judges of the three (3) divisions will alternate in the hold-

ing of courts in the three (3) divisions so that each judge will hold approximately one-third [1/3] of the first division (criminal) terms in each county of the district, and two-thirds [2/3] of the second and third division (civil) terms in each, county of the district."

Thus, it is abundantly clear that one of the main purposes and intended effect of the Act, was to permit the trial judges to transfer cases either civil or criminal from one division to the other so that the litigants in civil cases may obtain justice promptly and without delay, and so that the accused in criminal prosecutions may enjoy the right to a speedy and public trial. The various terms of the circuit courts are fixed by statute. Ark. Stat. Ann. § 22-310 (Supp. 1971) as it applies to the terms of court in Craighead County, is as follows:

"Craighead County, 2nd circuit.
Jonesboro District.
Terms, 1st division (criminal), on the 3rd Monday in April and the third Monday in November, 2nd division (civil), on the 2nd Monday in May and the 1st Monday in July; 3rd division (civil), on the 2nd Monday in January and the 2nd Monday in October."

Returning now to the case at bar, on September 21, 1971, Gardner filed a petition in the Craighead County Circuit Court, alleging that he had been incarcerated while awaiting trial since his arrest on April 9, 1971. In the petition he claimed his right to a speedy trial and prayed that his case be transferred from the criminal docket to the civil docket, and that he be tried in the term of court commencing October 11, 1971. In support of his petition for a transfer to the civil docket, the petitioner attached a memorandum brief reciting § 22-322.11 and § 22-322.12, *supra,* and also set out the per curiam order of this court entered June 28, 1971, pursuant to the provisions of Act 470 of 1971. On September 22, 1971, the judge of the criminal division of the Craighead Circuit Court denied Gardner's petition to transfer, because of the congestion of the civil docket for the upcoming term commencing on October 11, 1971.

In the motion to dismiss, filed on November 11, 1971, Gardner stated that he had been incarcerated in the Craighead County jail for a period approaching eight months; that he had been at all times demanding a speedy trial which had been denied him. He alleged that he had demanded a trial by letter to the prosecuting attorney on July 9, 1971, and had filed a petition for transfer of his case to the civil division of the second circuit court so that he could obtain a speedy trial, and he again called the trial court's attention to our per curiam entered on June 28, 1971. Gardner alleged that there had been one criminal and three civil terms of the Craighead Circuit Court during the time he had been incarcerated, and that he was entitled to a dismissal of the charges against him under the provisions of Ark. Stat. Ann. § 43-1708 (Repl. 1964) which is as follows:

"Time accused may be kept in jail.—If any person indicted for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense, which shall be held after the finding of such indictment, he shall be discharged so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner."

In the trial court's order denying Gardner's motion to dismiss, the court found that the per curiam order of this court entered on June 28, 1971,

"does not alter the existing statutory law pertaining to the jurisdiction of the various Divisions of the Second Judicial District's Circuit Courts."

The per curiam order above referred to is as follows:

"Pursuant to the provisions of Act 470 of 1971 the following rules are hereby promulgated by the Supreme Court of Arkansas in order that the ends of justice may be more efficiently and expeditiously served.

## I

All courts of this state having jurisdiction of criminal offenses shall henceforth, except for extraordinary circumstances, give precedence to the trials of criminal felony offenses over other matters before said courts.

## II

All courts of this state having jurisdiction of criminal offenses shall henceforth, in the absence of unusual or exceptional conditions requiring the expeditious trial of an accused person free on bail, give precedence to the trials of those criminal offenses in which the accused person is incarcerated by the state pending said trial."

The trial court was correct in stating that this per curiam order does not alter the existing statutory law pertaining to the jurisdiction of the various divisions of the second judicial district's circuit courts. The above per curiam only aids in the full compliance with the intent and purpose of Act 470 of 1971 under the jurisdiction the courts already have under Ark. Stat. Ann. § 22-322.12, *supra*. It has long been recognized by members of the bench and bar that our judicial machinery designed for more orderly times is ill equipped to handle the prolonged litigation in the volume and variety now placed upon it. Judges in all the states have observed with growing alarm, court machinery completely bogged down in lengthy and complicated litigation while litigants in civil cases clamor for a place on the trial calendar; and while those accused of crime are forced to languish in jail or are released on bond and permitted to roam free in the area of their apprehension while awaiting trial for a determination of whether they are guilty or not guilty of the charges against them. The people generally have recognized the problem in Arkansas and have responded through the legislature by enactment of such statutes as § 22-322.12, *supra,* and by such supplementary legislation as Act 470 of 1971. The pertinent first section of Act 470 provides as follows:

SECTION 1. The Supreme Court of the state of Ar-

kansas shall have the power to prescribe, from time to time, rules of pleading, *practice, and procedure with respect to any or all proceedings in criminal cases* and proceedings to punish for criminal contempt of court in all the inferior courts of law in this state." (Emphasis added).

The recognition and concern of the legislature with the problem involved is evidenced by the emergency clause to Act 470 which is as follows:

"The General Assembly finds that pleading, practice, and procedure in criminal cases and proceedings in the inferior courts of law of this state is not efficient, certain, or responsive to the reasonable expectations and legitimate needs of the people of this state; that the system of administering criminal justice in the state of Arkansas is in need of immediate reform; and, that the immediate passage of this act is necessary to empower the Supreme Court of the state of Arkansas, which the General Assembly finds to be the proper authority for prescribing rules of pleading, practice, and procedure in criminal cases and proceedings in the courts of this state, to effectuate such needed reforms. Therefore, an emergency is hereby declared to exist and this act being immediately necessary for the preservation of the public peace, health, and safety shall be in full force and effect from and after March 1, 1971."

It was the purpose and intent of our per curiam order to facilitate by rules of this court, under the authority if not the mandate of Act 470 of 1971, speedy trials in criminal cases under the authority already vested in the trial courts and under the existing statutory law pertaining to the various divisions of multiple-division circuit courts. The only effect of our per curiam order was to require, except for extraordinary circumstances, that the trial of criminal felony cases take precedence over other matters before the courts and as between the criminal cases, those cases in which the accused is incarcerated while awaiting trial, take precedence over cases where the accused is free on bond.

We now return to Gardner's primary contention that he is entitled to his release as a matter of law under the statute. In addition to § 43-1708, *supra,* pertaining to an accused who is in prison, a similar provision appears as Ark. Stat. Ann. § 43-1709 (Repl. 1964) relating to an accused who is free on bail. Section 43-1709 is as follows:

"If any person indicted for any offense, and held to bail, shall not be brought to trial before the end of the third term of the court in which such indictment is pending, which shall be held after the finding of such indictment, and such holding to bail on such indictment, he shall be discharged, so far as relates to such offense, unless the delay happened on his application."

We, of course, are not unmindful of the following section, Ark. Stat. Ann. § 43-1710 (Repl. 1964), as follows:

"Nothing in the two preceding sections shall be so construed, as to discharge any person who may have been indicted for any criminal offense, on account of the failure of the judge to hold any term of the court, or for the want of time to try such person at any term of the court."

These three sections have been a part of the Criminal Code of Arkansas since ancient times in our state judicial history, (see Revised Statutes of Arkansas 1837-38, Chapter XLV, §§ 169, 170, 171). They amount to a statutory limitation on the time an accused may be kept in jail or on bond awaiting trial when courts are in session and the judges have time to try the cases. If these sections were applicable to the proper administration of criminal justice over 100 years ago, they are no less applicable now, but they were obviously not enacted with overlapping terms of multi-division circuit courts in mind; so, we are of the opinion, and therefore hold, that the expiration of the terms within the meaning of the above statutes applies to terms in any one of the divisions in which the accused could be tried in a multi-division court and does not apply to the combined overlapping terms of the

combined divisions. Consequently, Gardner was not entitled to the statutory release under the facts of this case.

What constitutes a speedy trial within the meaning of the constitutional guarantee is not fixed or defined by statute, and must necessarily depend on the circumstances of the particular case. If an accused is in jail awaiting trial for a determination of whether he is innocent or guilty, he is entitled to a speedy trial as a moral and social, as well as a constitutional, right and certainly this right is considerably magnified if he is innocent of the crime charged. If an accused is free on bond while awaiting trial, he is also entitled to vindication as soon as possible if he is innocent, and he should not remain free and go unpunished any longer than is necessary if he is guilty of the crime charged. To hold the innocent in jail without a speedy trial or to permit the guilty to return to the scene of the alleged crime on the same day he is arrested and mingle free on bond for long periods of time among those who accused him, is hardly conducive to the deterrence of crime so sorely needed, and does not generate or enhance the public respect for, or confidence in, the courts and our judicial system. It is toward the correction of such evils that § 22—322.12 and Act 470 of 1971, *supra,* were enacted, and it is toward the correction of such evils that our per curiam order of June 28, 1971, was directed.

Returning now to the case at bar, the second term of no single division of the Craighead County Circuit Court had expired when Gardner's case was set for trial, so he was not entitled to a statutory release under § 43-1708, *supra,* as already pointed out. These release statutes, however, Ark. Stat. Ann. §§ 43-1708—1709, *supra,* fix the very outer limits on what constitutes a speedy trial in Arkansas and do not define what *is* a speedy trial under the Constitution.

The accused in this case remained in jail for more than seven months simply awaiting trial for a determination of whether he was innocent or guilty. It is difficult indeed to consider a trial after such a delay as a *speedy* trial in a three division circuit court in Arkansas where the

accused may be tried in any one of the three divisions by the simple process of transferring the case from one dicket to another under § 22-322.12, *supra*. On the assumption, however, that the trial court failed to recognize its jurisdiction and authority under § 22-322.12, *supra,* or misinterpreted the purpose and intent of our per curiam, *supra,* we hold that the trial court did not abuse its discretion in denying the motion to dismiss in this case, so the judgment in *this case* is affirmed.

Affirmed.

FOGLEMAN, J., not participating.