Leroy ALEXANDER v. STATE of Arkansas

CR 79-180                                    598 S.W. 2d 395

Supreme Court of Arkansas
Opinion delivered April 14, 1980
Rehearing denied May 19, 1980

*Thomas G. Montgomery,* Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Joseph H. Purvis,* Deputy Atty. Gen., for appellee.

RICHARD L. MAYS, Justice. Upon a charge of first degree murder, appellant was found guilty by a jury of second degree murder and sentenced to imprisonment for 20 years. For reversal on appeal appellant contends that he was denied a right to a speedy trial. We agree.

Appellant, Leroy Alexander, was arrested for first degree murder on August 12, 1978 and incarcerated in the Crittenden County jail without bail to await trial. As far as the record before us reveals, appellant continued to be held without bail after he was formally charged by information on September 5, 1978, and remained in jail without arraignment or any other action on his case for approximately six months, until February 7, 1979, when the prosecuting attorney's office advised the circuit court clerk to notify the appellant that his trial had been set in circuit court for February 26, 1979. Before appellant was notified of a trial setting, however, the Circuit Court of Crittenden County had convened at regular terms on three separate occasions to schedule matters for trial. On February 9, 1979, when appellant received notice of his trial setting, the public defender, acting on appellant's behalf, filed a motion to dismiss the murder charge against appellant for denial of a speedy trial. Before the appellant was actually tried on February 27, 1979, the circuit court convened at a regular term on February 19, 1979 for a fourth time.

Although both the state and federal constitutions guarantee a criminal defendant a right to a speedy trial, the meaning of that guarantee in terms of judicial administration is more specifically addressed by the Arkansas Rules of Criminal Procedure. Not only do the Rules of Criminal Procedure require courts to give priority to criminal cases over other matters in scheduling trials, they establish the highest priority for the scheduling of trials of criminal defendants who like appellant are incarcerated while awaiting trial. Moreover, the rules provide specific time limitations within which a defendant must be brought to trial to prevent his discharge. Since many of our trial judges travel a circuit in

which they are required by statute to open court at specified times in various counties within their judicial district, the time limitation on bringing a defendant to trial is expressed in "full terms of court." Rules 28.1(a) and (b) and 28.2(a) of the Arkansas Rules of Criminal Procedure provide:

RULE 28.1 Limitation.
(a) Any defendant charged with an offense in circuit court and committed to a jail or prison in this state shall be brought to trial before the end of the second full term of the court, but not to exceed nine (9) months, from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

(b) Any defendant charged with an offense in circuit court and held to bail, or otherwise lawfully set at liberty, shall be brought to trial before the end of the third full term of court from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

RULE 28.2 When Time Commences to Run.
The time for trial shall commence running, without demand by the defendant, from the following dates:

(a) from the date the charge is filed, except that if prior to that time the defendant has been continuously held in custody or on bail or lawfully at liberty to answer for the same offense or an offense based on the same conduct or arising from the same criminal episode, then the time for trial shall commence running from the date of arrest.

Rule 30 establishes the consequences for violation of the speedy trial rule and, excluding periods of necessary delay, provides for absolute discharge of a defendant who is not brought to trial before the expiration of three full terms of court.

Although quantifying the right to a speedy trial in terms of court provides a realistic standard for evaluating the con-

duct of prosecutors and courts in utilizing local judicial machinery to bring criminal cases to trial, it does not provide a fixed and uniform time period in which to determine violation of the speedy trial right. When the General Assembly established terms of courts for various jurisdictions by fixing the time of their beginning, it did not expressly fix the time for their ending or require that they last for any uniform period of time. In the absence of a fixed time for the termination of a term of court the general rule is that the term continues until the time fixed by law for the beginning of the next succeeding term of court. Since many of our jurisdictions also include courts with civil and criminal divisions and separate terms, determining which terms to count and when to count them presents further difficulty in assessing compliance with the speedy trial rule. Although Act 432 of 1977 abolished divisions in circuit courts, the act did not become effective until January 1, 1979, some five months after the appellant's arrest. Even before Act 432 of 1977 became effective, however, civil divisions of the court shared the responsibility with criminal divisions for disposing of criminal cases. Therefore, before January 1, 1979, the Crittenden County Circuit Court had three divisions, one criminal and two civil, with each having responsibility for protecting a criminal defendant's right to a speedy trial and with each division holding two terms a year as follows:

1st division (criminal), on the 3rd Monday in *February;* and the 3rd Monday in *September;*
2nd division (civil), on the 4th Monday in *January* and the 3rd Monday in *November;*
3rd division (civil), on the 2nd Monday in *May;* and the 4th Monday in *June.*

Although the Circuit Court of Crittenden County convened for its September, November, January and February terms before appellant was tried, the trial court held that appellant should not be discharged because only one "full term of court" had expired before his trial. Relying on our decisions in *Gardner* v. *State,* 252 Ark. 828, 481 S.W. 2d 342 (1972) and *State* v. *Knight,* 259 Ark. 107, 533 S.W. 2d 488 (1976), the trial court treated each division like a separate court and, although considering the expired terms of both the

criminal and civil divisions, only added terms in any one division to determine how many terms had expired. Calculating terms by this method, the trial court determined that only the September term had expired in Division 1, only the November term had expired in Division II, and no term had expired in Division III. Therefore, the trial court concluded that since no more than one full term of court had expired in any single division, the speedy trial rule had not been violated. Although the trial court's conclusion is consistent with our holding in *Gardner* and *Knight, supra,* it is inconsistent with our more recent decisions in *Harkness* v. *Harrison,* 266 Ark. 59, 585 S.W. 2d 10 (1979) and *Beaumont* v. *Adkisson, Judge,* 267 Ark. 511, 593 S.W. 2d 11 (1980). In *Harkness,* we not only recognized for the first time the need to add the expired terms of each division if the responsibility for expediting criminal cases was to be meaningfully shared by the judges of the criminal and civil divisions, but that after January 1, 1979, we could no longer calculate terms by any divisional method since divisions would no longer exist. In *Beaumont, supra,* we plainly recognized that Act 432 abolished divisions of circuit courts. Consequently, after January 1, 1979, the Crittenden County Circuit Court had three judges and held six terms a year with each term ending when the next succeeding term began instead of three divisions with each divisional term ending only when the next term within that division began. Therefore, under our decision in *Harkness,* the September term of Division I expired in January, 1979, the November term of Division II expired in January, 1979, and the January term of the Crittenden County Circuit Court expired on February 19, 1979 when the February term began, some nine days before appellant was tried. Since the record reveals no reason for the approximately six and one-half month delay in appellant's trial, and more than three full terms of court expired before his trial, he must be discharged for violation of his speedy trial right.

Reversed.

FOGLEMAN, C.J., concurs and HICKMAN AND STROUD, J.J., dissent.

JOHN A. FOGLEMAN, Chief Justice, concurring. The ma-

jority has reached a result that is inevitable and necessarily correct, however regrettable it may be that one who seems to have been guilty of the crime with which he was charged beyond a reasonable doubt will escape punishment. It is the primary function of the judicial system to preserve the rule of law, even if the guilty do escape punishment as a result of the courts' facing up to their responsibility.

This court has spoken on the purpose of speedy trial rules in reference to Ark. Stat. Ann. § 43-1708 (Repl. 1977). In *Ware* v. *State,* 159 Ark. 540, 252 S.W. 934, we said:

> *** But, as its manifest purpose is to promote dispatch in the administration of justice, it must commend itself to the enlightened judgment of every one who loves law and order as a wise as well as humane enactment. "Justice delayed is justice denied," says Mr. Gladstone. It is highly important to the public weal that those accused of crime shall be brought to a speedy trial in order that, if guilty, public justice may be meted out without delay. This is as powerful a deterrent to the commission of public offenses as is the knowledge that condign punishment will follow when the lawbreaker is overtaken in his crime. It is also humane and just to the accused, who may be innocent, because it imposes upon the ministers of justice the obligation not to unnecessarily delay the trial of the charge which the State has lodged against him, and to afford him an opportunity to prove his innocence before he has been compelled to endure a prolonged punishment by imprisonment beyond the end of the second term of the court after the term in which he was indicted. These were doubtless the dominant considerations in the minds of the Legislature when they enacted this statute. It has been a part of our laws ever since the State had an existence. These sections are found in the Revised Statutes and in all our digests. They are consonant with that provision of our Bill of Rights, art. 2, § 10 of the Constitution, which declares that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial," and also with art. 2, § 13, which declares that "he ought to obtain justice freely, and without purchase, completely,

and without denial, *promptly, and without delay,* conformably to the laws."

In referring to cases from other jurisdictions, which we said stated the law on the subject, we took a quotation from the opinion in *In re Begerow,* 133 Cal. 439, 65 P. 828 (1901). The following is an excerpt from that quotation:

> " *** The government cannot take property from the meanest inhabitant without just compensation paid or tendered in advance; but it takes his liberty, which, it has been justly said, is to some extent to take his life, upon a mere charge of crime. This is necessary that society may be protected. But necessity is the only excuse, and to imprison beyond what is absolutely necessary is tyrannous and oppressive. And that is precisely what the State has covenanted with each inhabitant that it will not do." The prisoner was discharged.

The innocent can be protected only if everyone, even Leroy Alexander, benefits from the protection which we have related to our own constitution. Speedy trial rules are not for the benefit of the state or any of its subordinate jurisdictions. Quite the contrary. They are a check on the state, its jurisdictions and its officials.

I would call attention to the fact that Alexander registered his objection on February 9, 1979, which was prior to the time Alred Harkness raised the same question, which was treated in *Harkness* v. *Harrison,* 266 Ark. 59, 585 S.W. 2d 10 (1979). Harkness was discharged, even before trial. It would be extremely difficult for Leroy Alexander, or anyone else in his place, to understand if he were treated differently, even though he did not follow his objection with a petition for prohibition.

In order to explain my position and to respond to fallacies in the dissenting opinion, it is necessary to first review some fundamental principles.

The time of the termination of terms of circuit court in

Crittenden County and the second judicial district has never been fixed by statute. Actually, the General Assembly has never specified any time for the term of any circuit court in Arkansas to end. When only one judge presided over the circuit courts in the second judicial district, the terms of court in Crittenden County ended when a term of court in another county in the judicial circuit began. *Roberts & Schaeffer* v. *Jones,* 82 Ark. 188, 101 S.W. 165; *House* v. *McGehee,* 188 Ark. 277, 65 S.W. 2d 21. In *Thomas* v. *State,* 196 Ark. 123, 116 S.W. 2d 358, the effect of Initiated Act No. 3 of 1936 was noted. Section 31 [Ark. Stat. Ann. § 43-1702 (Repl. 1977)] of that act, provided that when any circuit court is duly convened at a regular term, it should remain open for all criminal proceedings until *its* next regular term. This was a change in the law prior to the adoption of that act in that the terms of circuit court in Crittenden County would not end until the next regular term of *that court* began. The act clearly recognized, however, that the end of a term was determined by the beginning date of the next term. The act did not pertain to divisions of court at all. There was a restriction that prohibited a session of court in one county when its term was still open if it interfered with any other court to be held by the same *judge.* The judge of a court or of a division, in other words, could not hold a session of court in Crittenden County, when that court had recessed, if it interfered with his holding court in another county.

When the workload in the second judicial district had become too heavy for one judge to handle with dispatch, another division had been created by Act 138 of 1911. The divisions were designated as the first and second divisions. The act directed that the clerks of the various courts in the district should assign all civil cases to the first division and all criminal cases to the second division. The judges were authorized to divide the business in the courts of the district on a basis other than the civil-criminal division by written order if they deemed it expedient. It was not reversible error for a criminal case to be tried in the civil division. The beginning dates of terms of court for both divisions were fixed, not by dates, but by a designated Monday. The judges were not assigned to a particular division and the judges determined between themselves the division in which each would sit. The

begining dates of terms of court were fixed for the divisions. First division courts in Crittenden County had terms beginning the twelfth Monday after the first Mondays in February and September. The second division court terms began on the first Mondays in February and September. See Ark. Stat. Ann. § 22-310 (Repl. 1962).

By 1965, two judges were overloaded in the second judicial district and by Act 505 of 1965, provision was made for a third judge. Three divisions of each circuit court in the district were established. The act provided for the election of judges by designated divisions for the first time, but specifically provided that this should not be deemed an enlargement nor a diminution of their power as circuit judges to try and dispose of any litigation or matter which fell within the jurisdiction of the circuit court. Clerks were required to keep separate dockets for criminal and civil cases. The judge of the first division was designated to preside over cases on the criminal docket and the judges of the second and third divisions to preside over cases assigned to the civil docket, but the presiding judge of a division was authorized to assign any case, civil or criminal, from one docket to the other "as may be deemed best for the dispatch of business." The judges were directed to alternate in presiding over the three divisions. The act provided that on and after January 1, 1967, "the terms shall begin" at times and places fixed in the act. For the first division those terms in Crittenden County began as follows:

> First division (criminal): on the third Monday in February and September.
>
> Second division (civil): on the fourth Monday in January and the third Monday in November.
>
> Third division (civil): on the second Monday in May and the fourth Monday in June.

It is clear from the act that all three divisions had jurisdiction to try criminal cases.

Act 505 was amended by Act 12 of 1967, insofar as it

related to the second division. The beginning dates of the terms of that division in Crittenden County were designated as the fourth Monday in January and the third Monday in November. Thus, after the passage of the 1967 act, the terms of the circuit court of Crittenden County, Arkansas, began on the following days each year:

The fourth Monday in January (second division).
The third Monday in February (first division).
The second Monday in May (third division).
The fourth Monday in June (third division).
The third Monday in September (first division).
The third Monday in November (second division).

No change has been made in the beginning dates of terms of court in Crittenden County since the 1967 act. Termination dates were not fixed by that act or any other. Courts in the second judicial district have always operated under the general rule of law pertaining to termination of a term of court. This is succinctly stated at 21 CJS 233, Courts, § 151, viz:

A term of court continues until it is finally adjourned or expires by operation of law. The time for the expiration of a term of court by operation of law may be a definite date fixed by statute, or by an order made under constitutional or statutory authority, for its termination.

Where the time of beginning but not of ending of a term is fixed, the term, when it has been duly begun, will continue, and may for all general purposes be considered as in session, until it is adjourned sine die or, in the absence of a previous adjournment sine die, until the time fixed by law for the beginning of the next succeeding term; ***

Act 207 of 1951, Ark. Stat. Ann. § 22-312 (Repl. 1962), did not fix a termination date for any term. It was little more than an extension of the provision of § 31 of Initiated Act No. 3 of 1936 to civil cases. It specifically recognized the general rule of law by providing that the circuit court of each county, and of each division in each county, should be open, by *"operation of law,* at the beginning of each regular term of such

court, as fixed by law, and shall remain open until the beginning of the next such term of the court." [Emphasis mine.]

This was the state of the law when this court decided *Gardner* v. *State,* 252 Ark. 828, 481 S.W. 2d 342. In *Gardner,* we recognized the existence of the problem of crowded dockets. We spoke of the purpose and effect of Act 505 of 1965, saying:

> Thus, it is abundantly clear that one of the main purposes and intended effect of the Act, was to permit the trial judges to transfer cases either civil or criminal from one division to the other so that the litigants in civil cases may obtain justice promptly and without delay, and so that the accused in criminal prosecutions may enjoy the right to a speedy and public trial. The various terms of the circuit courts are fixed by statute. \*\*\*

We were then dealing with the provisions of Ark. Stat. Ann. § 43-1708 (Repl. 1964), which do not materially differ from a very similar provision of Rule 28 of the Arkansas Rules of Criminal Procedure. This court had, on June 28, 1971, entered a per curiam order adopting rules to require that precedence be given criminal cases by circuit courts. That per curiam order was quoted and it reads:

> Pursuant to the provisions of Act 470 of 1971 the following rules are hereby promulgated by the Supreme Court of Arkansas in order that the ends of justice may be more efficiently and expeditiously served.

> ### I

> All courts of this state having jurisdiction of criminal offenses shall henceforth, except for extraordinary circumstances, give precedence to the trials of criminal felony offenses over other matters before said courts.

> ### II

> All courts of this state having jurisdiction of criminal offenses shall henceforth, in the absence of unusual or exceptional conditions requiring the expeditious trial of

an accused person free on bail, give precedence to the trials of those criminal offenses in which the accused person is incarcerated by the state pending said trial.

We then stated the purpose of these rules, saying:

It was the purpose and intent of our per curiam order to facilitate by rules of this court, under the authority if not the mandate of Act 470 of 1971, speedy trials in criminal cases under the authority already vested in the trial courts and under the existing statutory law pertaining to the various divisions of multiple-division circuit courts. The only effect of our per curiam order was to require, except for extraordinary circumstances, that the trial of criminal felony cases take precedence over other matters before the courts and as between the criminal cases, those cases in which the accused is incarcerated while awaiting trial, take precedence over cases where the accused is free on bond.

The court then held that the expiration of the term, within the meaning of Ark. Stat. Ann. §§ 43-1708 — 43-1710, applied to terms in *any one* of the divisions in which the accused *could be* tried in a *multi-division* court and did not apply to the combined over-lapping terms of the combined divisions. This was a clear recognition that all three divisions of the circuit court of a county in the second judicial district had jurisdiction to try criminal cases and that they should be transferred from one division to another in order to guarantee a speedy trial to an accused. The appellant in that case was not discharged because the second term of *no single division* of the court had expired when his case was set for trial. Thus it is clear that, at that time, an accused would have been entitled to release if two full terms of any division had expired when his case come on for trial. It is also clear that this court regarded the *divisions* (not the judges, who alternate) as having separate and independent terms.

We were next confronted with the speedy trial situation in a multi-judge district in *State* v. *Knight,* 259 Ark. 107, 533 S.W. 2d 488, which arose in the Circuit Court of Crittenden

County. We were again dealing with Ark. Stat. Ann. §§ 43-1708 — 43-1710, because the Arkansas Rules of Criminal Procedure had not become effective. Of course, we still treated the *divisions* as if they were separate courts, insofar as terms of court were concerned. We applied the rule of *Gardner* in determining that no two terms of any division had expired before Knight's trial was set. It is also significant that we specifically pointed out that the end of a term in *any division* ended when the next term *in that division* began. Otherwise, divisions were not significant, because it was made clear that Knight could have been tried in any division of the court. It was urged by the two dissenters in that case that we should apply the rule as appellant seeks to have done here, even though, at the time *Knight* was decided, there were three divisions of the circuit court of Crittenden County.

Much has changed since *Knight* was decided. The first change was the adoption of the Arkansas Rules of Criminal Procedure, effective January 1, 1976. Although we had made it clear that the reservation of certain terms of court for civil cases could no longer be accepted because criminal cases were being held on the docket far too long, the effect of Criminal Procedure Articles I and II, quoted above, was preserved. Article VIII of the Arkansas Rules of Criminal Procedure is addressed to speedy trial. Rule 27.1 is the very first rule in that article. It was intended to retain the substance of the earlier rules adopted by this court in the per curiam order of June 23, 1971. See Commentary to Article VIII. The rule is as follows:

> *All courts of this state having jurisdiction* of criminal offenses shall:
> (a) except for extraordinary circumstances, give precedence to the trials of criminal felony offenses over other matters before said court; and
> (b) in the absence of unusual or exceptional conditions requiring the expeditious trial of an accused person free on bail, give precedence to the trials of those criminal offenses in which the accused person is incarcerated by the state pending said trial. [Emphasis mine.]

Therefore, criminal cases were to take precedence in "civil" divisions, and the trials of those incarcerated were to take precedence over all other cases in any and all divisions.

We then undertook to establish standards to govern in determining when an accused was to be discharged for failure to accord him a speedy trial. The resulting rules were adopted in an effort to bring some measurable standards, in the form of specificity, to the rather indefinite balancing process mandated by cases such as *Barker* v. *Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). See Commentary to Article VIII. The pertinent rules, like our statutes which they supplanted, require no showing of prejudice. The purpose of the rules was to eliminate the necessity for such a showing. When the time allowed has expired, the prejudice is presumed, and for good reason. For example, how does one show on motion to dismiss, how the memory of a witness has become befogged or untrustworthy by passage of time, in a way that this factor can be balanced in the scales with other pertinent factors? No showing of prejudice was ever required under Ark. Stat. Ann. §§ 43-1708 — 43-1710. A showing of prejudice has never been required in the application of our own speedy trial rules, as distinguished from those cases where *Barker* alone is applicable.

There was a prime example of the memory failure of a witness in this case, and the net result of a memory refreshment was unfavorable to appellant. On the other hand, it is possible that the witness, due to passage of time, might have given a version less favorable to appellant than her original statement. In order to make the governing periods of time specific, they were stated as limitations and they should be applied as an absolute bar to prosecution. See *Ware* v. *State,* 159 Ark. 540, 252 S.W. 934. We have held Rule 28.1 (b) is jurisdictional and that prohibition is available to an accused who has been denied the right to speedy trial. *Callendar* v. *State,* 263 Ark. 217, 563 S.W. 2d 467. This is also applicable to Rule 28.1 (a). See *Harkness* v. *Harrison,* 266 Ark. 59, 585 S.W. 2d 10 (1979). A reading of the rules makes this effect obvious and mandatory. Pertinent portions of the rules are as follows:

## RULE 28. LIMITATIONS AND EXCLUDED PERIODS

RULE 28.1 Limitation

(a) any defendant charged with an offense in circuit court and committed to a jail or prison in this state shall be brought to trial before the end of the second full term of the court, but not to exceed nine (9) months, from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

(b) any defendant charged with an offense in circuit court and held to bail, or otherwise lawfully set at liberty, shall be brought to trial before the end of the third full term of court from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

RULE 28.2 When Time Commences to Run.

The time for trial shall commence running, without demand by the defendant, from the following dates:

(a) from the date the charge is filed, except that if prior to that time the defendant has been continuously held in custody or on bail or lawfully at liberty to answer for the same offense or an offense based on the same conduct or arising from the same criminal episode, then the time for trial shall commence running from the date of arrest;

(b) when the charge is dismissed upon motion of the defendant and subsequently the defendant is arrested or charged with an offense, the time for trial shall commence running from the date the defendant is subsequently arrested or charged, whichever is earlier;

RULE 28.3 Excluded Periods. [Not material to this case.]

## RULE 30. CONSEQUENCES OF DENIAL OF SPEEDY TRIAL

RULE 30.1 Absolute Discharge.

(a) Subject to the provisions of subsection (b) hereof, a defendant not brought to trial before the running of the time for trial, as extended by excluded periods, shall be absolutely discharged. This discharge shall constitute an absolute bar to prosecution for the offense charged and for any other offense required to be joined with that offense.

(b) An incarcerated defendant not brought to trial before the running of the time for trial as provided by Rules 28.1 — 28.3 shall not be entitled to absolute discharge pursuant to subsection (a) hereof but shall be recognized or released on order to appear.

(c) The time for trial of a defendant released pursuant to subsection (b) hereof shall be computed pursuant to Rules 28.1 (b) and 28.2.

RULE 30.2 Waiver
Failure of a defendant to move for dismissal of the charges under these rules prior to a plea of guilty or trial shall constitute a waiver of his rights under these rules.

The next change to take place was the adoption of Act 432 of 1977. It was entitled:

AN ACT to *Establish* the Circuit Court and Chancery Court Circuits in this State; and for Other Purposes. [Emphasis mine.]

Section 1 provided that, effective January 1, 1979, the several circuit-chancery court circuits in the state should be constituted as specified in that statute. The second circuit was composed of one less county than the previous second judicial district had been, but the numbering of the district was a fortuitous circumstance as a comparison of the numbering of other districts will show. It was provided that the electors of that circuit should elect three circuit judges and three chancellors, without any reference whatever to divisions.

The premise of the dissenting opinion that Crittenden County has three divisions is unsound. There are no divisions of any circuit since the passage of Act 432, which was effective January 1, 1979. *Beaumont* v. *Adkisson, Judge,* 267 Ark. 511,

593 S.W. 2d 11 (1980). Few, if any of the judicial districts retained their identity when that act became effective. The General Assembly in a comprehensive rearrangement of judicial districts did not see fit to perpetuate the division concept. Instead of multi-division districts, we now have multi-judge districts. Where judges were formerly elected by divisions, they were elected by positions under Act 432. It was clearly recognized in *Harkness* v. *Harrison,* supra, that the laws distinguishing civil and criminal divisions were abolished by this act. We said that we would count the terms of court of *each* division when Rule 28 is in issue. Although we listed terms there by divisions, we said that it could readily be seen that unless excludable periods precluded the application of Rule 28, Harkness had not been timely brought to trial. I see absolutely no suggestion in that opinion that terms of court still related to divisions and that the termination date of a term of court had not been affected by Act 432. We did not make any calculation of terms in *Harkness;* that decision was based solely on the division concept, but we pointed out that the September 1978 term of Division I had passed. It had, under any system of calculation. We also said that the January 1978 and November 1978 terms of Division II had passed. They had, whenever the termination date might have been. But it is important to note that we granted prohibition and that Harkness would not have been entitled to prohibition unless *three* terms of court had passed. Therefore, it was necessary to consider that three terms had passed before the date set for his trial, or he would only have been entitled to release from custody. Harkness does not mandate a result different from that reached in the majority opinion.

There was no occasion to overrule either *Gardner* or *Knight* when *Harkness* was decided because there is absolutely no conflict or inconsistency among the three. Neither *Gardner* nor *Knight* held that if three terms in any one division had not run under Ark. Stat. Ann. § 43-1708 — 43-1710 (Repl. 1977) (not Rule 28 as indicated in the dissenting opinion, because it was not then effective), an accused would not be entitled to discharge. To the contrary, in both *Gardner* and *Knight,* we held that three terms had not passed in *any one division.*

In this case Alexander raised the question about a

month earlier than Harkness did, but did not seek prohibition. Instead, he pursued the question on appeal, as he had a right to do. Harkness was arrested on August 12, 1978, and the information was filed on September 5, 1978. Both Harkness and Alexander were in a sort of twilight zone. It is quite clear that when Act 432 of 1977 became effective, there were no longer any divisions of the circuit courts. See *Beaumont* v. *Adkisson, Judge,* supra; *Harkness* v. *Harrison,* supra. Since those courts which had been multi-division courts became only multi-judge courts, the terms of circuit court in any county in a multi-judge district became terms of court for the circuit court of that county and not for divisions of the circuit court. Divisions previously had different terms, but judges did not, and do not, have terms of court in Crittenden County, or in any other county in the district, or anywhere else in the state. The beginning dates of the terms of court in Crittenden County were fixed by Ark. Stat. Ann. § 22-310 (Supp. 1979). They are:

1. The fourth Monday in January
2. The third Monday in February
3. The second Monday in May
4. The fourth Monday in June
5. The third Monday in September
6. The third Monday in November.

Therefore, when Act 432 of 1977 became effective each term of circuit court in Crittenden County ended when the next term began. But in the case of both Harkness and Alexander, the system used in *Gardner* and *Knight* was applicable until January 1, 1979. Consequently, we find that Alexander was arrested and charged during the February, 1978, term of Division I, the January, 1978, term of Division II, and the June, 1978, term of Division III. The first term of the Circuit Court of Crittenden County under Act 432 began on January 22, 1979. The effect of Act 432 of 1977 was that all terms of all divisions ended on that date. So, on January 22, 1979, two terms of Division I had expired, i.e., on September 18, 1978, and January 22, 1979. Two terms of Division II had expired, i.e., on November 20, 1978, and January 22, 1979. Although only one term of Division III had expired, Alexander was entitled to be discharged from custody because two terms of

court had expired in two "divisions" but his trial was not barred until a third term expired. He was tried on February 27, 1978.

A new term of court had commenced on February 19, 1979, so a third term had expired on that date, and Alexander was entitled to absolute discharge. The bar was absolute so it was jurisdictional. It resulted from our own prescriptions of definite and ascertainable standards and from the abolishment of divisions of circuit courts.

I am unable to understand how it can be said there is no longer any provision for three divisions of the circuit courts in the second *circuit* (most of the counties of which were in the second judicial *district*) but only for three judges, as stated in the third paragraph of the dissenting opinion, and still be said "when another circuit judge from another division begins his term." I would also point out that "two or more circuit courts of the same circuit" in Ark. Stat. Ann. § 22-312 (Repl. 1962) in the quotation in the tenth paragraph of the dissenting opinion are not the same as two or more circuit courts *of the same county*. There is only one Circuit Court of Crittenden County or of any other county in Arkansas. The Circuit Court of Crittenden County and the Circuit Court of Poinsett County, for instance, are two circuit courts of the same circuit, and both may be in session at the same time.

I find nothing in the majority opinion stating that terms of court begin by divisions after January 1, 1979. The situation in the second circuit is unique, only in that it is the only circuit in which there are three, rather than one or two or five circuit judges, and the regular terms of court occur more frequently.

I see no reason or necessity to change our rules to have an identical time period in every circuit, unless or until the General Assembly may establish a single annual term for each circuit court. The nine-month limitation is a protective outside limitation. Speedy trial standards must permit a balancing of the rights of an accused and the judicial resources of the state. In counties where there are frequent terms of court, judicial resources should permit a more ex-

peditious disposition of criminal charges, particularly when the accused is held in jail for trial on a specific charge. New terms permit new docket settings on a clean slate.

The proposal that the term concept for speedy trial rules should be abandoned overlooks the fact that in many districts the nine months period is rather meaningless because the required two terms will have already expired. There has been a concerted effort to bring about a reduction of the time allowed to bring an accused to trial. The nine months period only comes into play in those districts where terms of court may last for more than four months. Some last as long as six months. Yet consideration must be given to the fact that in some districts a single circuit judge may have as many as five counties in which he must endeavor to maintain some degree of currency of both criminal and civil dockets. It is only reasonable that in a district having numerous terms of court and two or more judges, a quicker disposition of cases should be expected than in a single judge district. But in no district do we even approach the ultimate 100-day limit mandated by Congress for the federal courts. See 18 U.S.C. § 3161 (1976). But it is, of course, essential that we balance the rights of the accused and the ability of the courts to hold court and dispose of cases in any particular county.

I would reverse the judgment and dismiss the case.

DARRELL HICKMAN, Justice, dissenting. Alexander was brought to trial within three terms of court and I would affirm his conviction. He was tried during the third term of court as we count terms in *Harkness* v. *Harrison,* 266 Ark. 59, 595 S.W. 2d 10 (1979). It is my understanding that an individual incarcerated may apply for release from incarceration if he is not tried within two terms but is not entitled to an absolute discharge unless he is not brought to trial within three terms of court. Rules of Crim. Proc., Rule 30.1 Alexander did not apply for release.

The majority has, in my judgment, read into our decision in *Harkness* a manner of fixing terms that is not expressed, nor implied, in *Harkness*. Indeed, the majority's method of

computing terms of court in Crittenden County is contrary to our decision in *Harkness.*

Being the author of *Harkness,* I accept the responsibility for it, its clarity, and its soundness. Perhaps our decision should have specifically overruled two prior decisions, *Gardner* v. *State,* 252 Ark. 828, 481 S.W. 2d 342 (1972) and *State* v. *Knight,* 259 Ark. 107, 533 S.W. 2d 488 (1976), because there is no doubt *Harkness* overruled these cases as to counting terms of court in the Second Judicial Circuit. The reason *Harkness* gave for changing the determination of terms was the fact that Act 432 of 1977 no longer provided for three divisions of court in this circuit but only three judges. The three judges of this circuit had been designated as judges of a division of circuit court; Division I being a judge for criminal cases, and Divisions II and III were designated to try civil cases.

In applying Rules of Crim. Proc., Rule 28 to determine if a person has a speedy trial, it is usually necessary to count terms of court. In *Gardner* and *Knight* we only counted terms in any one division, never "overlapping" terms of the various divisions. If three terms had not run in any one division, then Rule 28 did not become effective.

*Harkness* changed that method of counting terms by providing that the terms of each division must be counted in applying Rule 28 and if a total of three terms of court had run in any of the divisions, whatever their designation, then Rule 28 would be applied.

However, we specifically said in *Harkness* that terms of the circuit court were not affected. Then, we went on to set out the terms as they exist in Crittenden County which are designated by divisions. This designation is by statute and we approved it. On rehearing, we were asked to clarify *Harkness* so the state would know exactly how to count terms after *Harkness.* We clarified our decision and related exactly what terms had run. We said:

> . . . The 1978 Term of Division I had passed; the January, 1978 and November, 1978 terms of Division 2 had passed. All of these are *full terms* of circuit court that

had lapsed without any action on the charge. [Emphasis added].

Consequently, it is clear to me that *Harkness* stands for the proposition that while divisions of circuit court no longer exist in that one can be designated criminal and another civil - there is but one circuit court, the terms of the court as set by the General Assembly were not affected.

It is a complicated procedure to count terms of court in Crittenden County. However, I think that *Harkness* is clear as to what method will be used. That is, as clear as it can be. Now, the majority is saying that while terms of court may begin in Crittenden County as provided by the General Assembly, they may not end as provided by the General Assembly. Now, the majority is saying that a term ends when another circuit judge from another division begins his term. While that may sound reasonable, that is not what the law provides.

Ark. Const. art. 7 § 12 says that the General Assembly has the authority to set terms of court. Ark. Stat. Ann. § 22-312 reads in part:

. . . The circuit court of each county, and of *each* division in each county *having two* [2] *or more divisions* of circuit court, shall be open, by operation of law, at the beginning of each regular term of *such court,* as fixed by law, and shall remain open until the beginning of the next *such term of court;* . . . [Emphasis added.]

The same statute goes on to state:

. . . Two [2] or more circuit courts of the same circuit may be concurrently in session. . . .

These laws, in my judgment, provide that a term of court begins and ends at the beginning of the next term of court in that division.

It is a paradox that the majority finds that the General

Assembly can begin terms, by division, in Crittenden County but cannot end them by division.

There is no doubt that the situation in the Second Judicial Circuit is unique and it has given us some problems. We changed the rule in *Harkness* and for good cause. But to again change the rules, in my judgment, cannot be justified. *Harkness,* for good or ill, stands and it should stand unless it is overruled for good cause and that, I submit, the majority is not doing.

There are other considerations. The Rules of Criminal Procedure were adopted by this court and if they cannot be uniformly applied throughout the State of Arkansas, then they should be changed. What we have is a situation where a criminal defendant will have to be tried in Crittenden County in about six months whereas the same criminal defendant may not have to be tried in Pulaski County for over a year. Furthermore, we have the majority deciding that a term of court in Crittenden County may last only three weeks.

While we must deal with this specific case, we should address the total problem since we have authority to do so. We should change our rules. While that is not an easy task, since terms of court vary throughout the state, a uniform standard should exist so that all criminal defendants have the same right to a speedy trial in all parts of the state.

There is another alternative and that is that the General Assembly can deal with this matter by making terms of court uniform. For example, terms of court in the Second Circuit should be changed so that we do not have the problem of overlapping terms. In Pulaski County there are five circuit judges but all of the terms begin and end at the same time and the problem does not arise in Pulaski County as it does in Crittenden County.

There were other allegations of error in the case of Alexander but I find no merit to them and I would affirm the judgment.

JOHN F. STROUD, Justice. The majority has counted

terms of Crittenden County Circuit Court in a manner so strained that I cannot agree with the opinion. For the *first* time this court is holding that, for purposes of applying the speedy trial rules, a term of court ends in multi-judge districts when the term of another circuit judge begins in that county. I think it is an interpretation that was never contemplated nor intended by the legislature when it adopted Act 432 of 1977 abolishing divisions in circuit court. As was pointed out in *Harkness* v. *Harrison,* 266 Ark. 59, 585 S.W. 2d 10 (1979), without dissent less than a year ago, the abolition of the distinction between civil and criminal divisions did not affect the terms of circuit court. The majority is using the date set forth in Ark. Stat. Ann. § 22-310 (Repl. 1962) to determine the beginning of a term of circuit court in Crittenden County, but is not applying the date for the end of that term set forth in the same statute. The opinion of the majority is also inconsistent with the language of Rule 28 of the Rules of Criminal Procedure. The Rule requires the defendant to be brought to trial "before the end of the third *full* term of court." (Emphasis added.) The reference to *full* term surely does not mean the early termination of the term because the term of another circuit judge begins.

I urge amendment by this court of Rule 28 to create clarity and bring uniformity to its application throughout the state. I see no justification for a rule requiring a criminal trial in Crittenden County in half the time allowed in some other counties of Arkansas. I would amend the rule by specific reference to the calendar and not to terms of court. Rules 27, 28, 29 and 30 of the Rules of Criminal Procedure follow with very few exceptions the Standards, Speedy Trial published by the American Bar Association. The most notable exception, however, is the expression of time requirements in terms of court rather than by a fixed period of time. Whether the time limitations be nine months for an incarcerated defendant and twelve months for a defendant on bail, or some other time limitations, I feel this type of change would substitute stability and understanding for confusion. The rights of a criminal defendant to a speedy trial should be determined by how long he is incarcerated pending trial and how long he must wait for trial. I also believe the true concern of criminal defendants is with the length of time involved and not with how

many terms of court have passed or how many judges have come to town.

We cannot expect the circuit judges and prosecuting attorneys of this state to abide by the rules governing speedy trials when this court keeps changing the rules by court interpretation and then applies them retroactively. In *Harkness* v. *Harrison,* supra, felony charges were dismissed due to the adoption of a new method of counting terms of court in Crittenden County. In the case here on appeal, a convicted murderer will be discharged from prison by the same retroactive application of a rules change. The defendant was tried on February 27, 1979, but the *Harkness* decision was not rendered until June 18, 1979. There is no question but that Alexander was given a speedy trial under the language of *State* v. *Knight,* 259 Ark. 107, 533 S.W. 2d 488 (1976), which was the latest pronouncement of this court concerning the counting of terms of court in Crittenden County at the time of his trial. Normally, we do not retroactively apply amendments made to the Rules of Criminal Procedure, and I think it wrong to amend the rules by court interpretation and apply that change retrospectively under the guise that it is jurisdictional. How can it be jurisdictional when our rules provide that a right to a speedy trial is waived if not raised before a plea of guilty or trial? Ark. Stat. Ann. Vol. 4A, Rules of Criminal Procedure, Rule 30.2 (Repl. 1977).

I would affirm the trial court because I feel the defendant was given a speedy trial under the applicable law of Arkansas, and because I find no merit to the other allegations of error raised by appellant.